## Venchik *v.* Pennsylvania Railroad Company, Appellant.

## Blaskey *v.* Pennsylvania Railroad Company, Appellant.

Argued December 16, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Theodore Voorhees,* with him *Harrison H. Clement* and *Barnes, Myers & Price,* for appellant.

*Milford J. Meyer,* with him *Robert M. Bernstein,* for appellees.

OPINION BY HIRT, J., January 30, 1941:

Plaintiffs were guest passengers in a Ford Truck driven by the owner eastwardly on Oregon Avenue in Philadelphia at about 2:30 in the morning of September 9, 1934. Because of rain and mist the driver failed to observe defendant's freight train in the crossing at Swanson Street and crashed into it, injuring plaintiffs. There is nothing in the evidence charging either of them with contributory negligence in view of the verdicts in their favor, and that question is not involved in this appeal. Defendant's negligence is the sole issue.

The railroad crosses Oregon Avenue at right angles. A locomotive and tender carrying a crew had backed over the crossing and into a siding a short distance south of Oregon Avenue and was coupled to a train of twenty-two freight cars. It remained standing there according to defendant's testimony while the brakeman inspected the couplings and the air connections of the entire train and then moved northwardly across Oregon Avenue with the draught of cars. The ultimate fact bearing upon the subject of defendant's negligence is whether the train came to a stop on the crossing and obstructed it for an unreasonable length of time. The

440

applicable principles of law are discussed in the former appeals of these cases. 138 Pa. Superior Ct. 465, 10 A. 2d 891. Our holding there goes no farther than to say that the testimony of plaintiffs' witnesses that the train remained motionless on the crossing for eight or ten minutes made out a prima facie case of negligence and was sufficient to put the burden upon defendant of coming forward with testimony to establish its innocence by evidence that the train did not come to a stop or that in using the crossing it exercised due care and diligence. In view of the prima facie case made out by plaintiffs, the entry of a nonsuit was improper.

We are convinced that plaintiffs' testimony on the second trial involved in this appeal was wholly negative in character and was controverted by the direct and positive evidence of defendant's witnesses; the defendant therefore, was entitled to binding instructions in its favor as a matter of law.

If the train was in motion while blocking the roadway, the defendant was not negligent, for a railroad in using a crossing for the movement of its trains in a proper manner has rights superior to those approaching on the intersecting highway. *Blaskey, Appellant v. Penna. R. R. Co.*, supra; *Wink v. Western Md. Ry. Co.*, 116 Pa. Superior Ct. 374, 176 A. 760; *Everetts v. Penna. R. R. Co.*, 330 Pa. 321, 198 A. 796. They who were in the best position to know the movement of the train and whether it stopped on the crossing, were defendant's employees in charge of it. One member of the crew testified that the locomotive drawing the train proceeded from the siding south of the crossing at two or three miles an hour across Oregon Avenue; that when the locomotive was about forty feet beyond the crossing, the truck in which plaintiffs were riding, ran into the side of the second freight car and on signal to the engineer the train then was stopped instantly. He said that the train did not stop on the crossing at any time

until after the accident. The engineer testified: "Q. Did you at any time stop your locomotive, stop your train, prior to the accident? A. After I started to pull? No." The brakeman when asked: "between the time when your locomotive traveled down to the crossing in question light, and the time when it was brought to a stop immediately following the crash, did the train at any time stop with any part of the locomotive or any of the cars blocking the crossing at Swanson Street and Oregon Avenue?" answered: "No sir." The conductor had died before the first trial and all of the above remaining members of the crew testified positively that the train was moving over the crossing when struck and that it came to a stop only because of and after the accident.

Neither plaintiff observed the train at the crossing. The driver of the truck is dead, and plaintiffs' recovery must rest, if at all, upon the testimony of two witnesses. One of them, Stephen Brown, was about to enter a small restaurant, a dining car on the north side of Oregon Avenue, about 232 feet west of the east track used for the movement of the train. This witness said that it was then so quiet that "if there is anything moving at that hour of the morning you could hear it very clearly." He heard the truck approaching on Oregon Avenue and after the crash he ran to the crossing. He found the front of the truck against a freight car headed toward the north at an angle of 45 degrees, the direction in which the train was moving. The freight train then blocked the entire crossing but when asked whether the cars making up the train had stopped he answered: "Just *about* a stop." This testimony does not sustain plaintiffs' contention but on the contrary corroborates defendant's witnesses who said that the train was in motion until immediately after the accident. If their testimony is true, this witness running toward the railroad at the sound of the impact would arrive about

the time the train stopped. His language "just about a stop" describes the train as he observed it, coming to a stop but still in motion, and is no proof that the train was standing on the crossing at the time of the accident.

Plaintiffs' other witness, Thibodeaux, testified that he was employed as a truck driver for Oregon Ice Company whose place of business was located on the south side of Oregon Avenue directly opposite the diner. He was on night duty and had just left the diner and was crossing the street intending to enter his employer's office to use a telephone when he "heard a noise, the train seemed to be moving, but by the time I got across the street it was slowed, like a stop, like a car would stop, you know." He testified in answer to questioning by the trial judge: "Q. How long did you continue to hear the noise of the train? Could you hear, or know, whether it was moving or trying to stop or just checking way? A. Well, it was over, there was no more noise after they once stopped. Q. Where did the noise stop, at what point? Where were you at this point it stopped? A. Entering the door of the office. Q. In other words, when you were entering the door of the office the noise stopped? A. Yes." He did not see the train. He went into the office, leaving the door open and made a telephone call and as to the time consumed in telephoning, said: "By the time I hung up and started across the street again, I would say it was about twenty minutes." Referring to that interval and until he left the office, he said: "Well, at the time you refer to I didn't hear anything." Continuing, he testified: "after I made the phone call I proceeded back to the diner. Having left the curb about five or six feet I heard a noise, and I turned around and seen the machine, at the time didn't recognize it was the truck, pass me, and really, so foggy it was, I thought I would go back to the curb again, because I figured he can't

see me, and so I went back to the curb, let the machine go by, proceeded across the street again. After reaching about halfway of the street I heard a crash, not knowing what it was, and I heard it in the direction I came and I started running towards it, and after jumping towards it I found the truck had hit the train." The statement of this witness that, as he was entering the building, he heard a noise "like a train would stop," is positive testimony. But it is entirely consistent with defendant's testimony that the locomotive backed over the crossing and stopped in the siding beyond, while the brakeman inspected the couplings on twenty-two cars. It is no evidence that the train then came to a stop blocking Oregon Avenue. The remainder of his testimony on the subject is wholly negative. The same may be said of the testimony of these witnesses to the effect that they heard no warning of the approach of the train. Defendant's witnesses testified positively that the bell was ringing.

"The legal rule stated has been frequently recognized and applied in this State, and it has been uniformly held that where the evidence to establish lack of proper care is negative only, it is overcome by the positive evidence to the contrary, though the latter comes from the mouths of defendant's witness, and, under such circumstances, the question is not one for the jury to pass upon, where the physical facts corroborate their testimony (*Anspach v. R. R.*, 225 Pa. 528; *Keiser v. R. R.*, 212 Pa. 409; *Knox v. R. R.*, 202 Pa. 504; *Zotter v. Lehigh Valley R. R. Co.*, 280 Pa. 14), which simply means that under such circumstances, the negative testimony, being controverted, does not amount to more than a scintilla, and therefore cannot prevail to establish an essential fact": *Grimes v. Penna. R. R. Co.*, 289 Pa. 320, 137 A. 451; *Craft v. Hines, Dir. General*, 272 Pa. 499; 116 A. 379; *Haller v. Pennsylvania R. R.*, 306 Pa. 98, 159 A. 10.

Unless the witness Thibodeaux was in such position as to permit the inference that he must have heard the noise of the train in motion or of the bell, his testimony is overcome by the positive testimony of the train crew. *Grimes v. Penna. R. R. Co.,* supra. The fact that the witness heard no movement of the train while he was telephoning is no evidence that the train was not moving across Oregon Avenue during that time. It is unreasonable to infer that he would have heard it. He was at least 232 feet from the train and was inside an office building, though the door was open. The receiver of the telephone was at one ear and it must be assumed that he was giving attention to his telephone call. *Charles, Appellant, v. Lehigh Val.. R. R. Co.,* 245 Pa. 496, 91 A. 890. He had no reason to listen for a moving train and there is no evidence of anything unusual that would attract attention. The noise of a slowly moving train may be so slight that it could not be heard for any considerable distance. While in the office he was not in a position to hear and when he had left the office and started to cross the street his attention was attracted to the noise of the passing truck until it crashed into the train.

Judgments reversed and directed to be entered for defendant.