Opinion by
 

 Baldrige, J.,
 

 Three plaintiffs in an action of trespass obtained verdicts against the defendant. The court below on motion entered judgment n. o. v. in favor of the defendant. The plaintiffs took separate appeals.
 

 Pudloski, the driver of the truck which hit defendant’s locomotive, sued to recover for personal injuries. The Camden Fire Insurance Company, insurer, paid the Commercial Investment Trust, Inc., which had financed the purchase of the truck, the gum of $1550, and the insurance company sought to recover that sum. Joseph Thomas, the owner of the truck, claimed $250 representing the amount deductible from the insurance policy furnished by the insurance company.
 

 Pudloski, plaintiffs’ only witness to the accident, testified that on the night of January 3, 1938, about 9:30 p. m. he left Wilkes-Barre on one of his regular trips to the produce markets on Dock Street in the City of Philadelphia. This particular night he took a different and unfamiliar route when he reached Philadelphia. At about 2:30 a. m. the following morning with the weather cold, clear, and dry, he was driving south on Second Street, a one way thoroughfare with a single set of trolley tracks in the center of the 34 foot wide cartway, with 13 foot sidewalks. Pudloski, proceeding at a speed of about 20 miles an hour, with his truck straddling the east rail of the car tracks, with the doors and windows of his cab closed and his headlights on the “low beam” which enabled him to see ahead approximately 15 feet, approached Willow Street on which railroad tracks are located. Willow Street crosses Second Street almost at right angles and is 30 feet wide, but is without a northern sidewalk. When Pudloski was about 12 feet from the nearest railroad track he noticed for the first time the tender of the locomotive about 6 to 8 feet west of the east curb of Second Street, slowly emerging from the shadows of the buildings and
 
 *131
 
 traveling west on Willow Street. The locomotive must have moved the width of the sidewalk, Í3 feet, and 6 to 8 feet further, or 19 to 21 feet, after passing the buildings. Pudloski, confronted with a danger, turned suddenly to the right and applied his brakes, attempting to avoid a collision, but his truck struck the tender. He was unable to state exactly where the impact occurred, but it was approximately the middle of the intersecting streets. He stated that he heard no warning whistle or hell and saw neither a light on the tender of the locomotive nor a street light at this intersection.
 

 The defendant offered testimony showing that the locomotive was headed east but moving westward drawing a train of 34 cars and going at a speed of from 2 to 3 miles per hour. A brakeman with a red lantern and a white lantern, both of which were lighted, preceded the locomotive with its bell ringing constantly and with the usual headlight on its tender, which was lighted. He stood in the center of the car track in the intersection of these two streets to warn traffic of approaching danger and attempted to stop the truck driven by Pudloski, but was unsuccessful. The tender came to a stop on Second Street with its head end just over the west rail of the trolley track.
 

 This testimony was corroborated by the fireman, who was in the cab of the locomotive and had applied the emergency brake, which brought the train to a stop. The warning given, the position of the train and the motor truck, and that a standard city street light, suspended from a pole almost directly above where the collision occurred, was burning, were testified to by other members of the crew as well as several city police officers, who arrived almost immediately upon the scene.
 

 Admittedly, the train was barely moving and it was occupying, before the accident occurred, the left portion of Second Street where Pudloski was driving. We, therefore, have a case of a driver of a truck colliding with a
 
 *132
 
 locomotive that had reached a street crossing and was running so slowly that notwithstanding 34 ears were attached, it stopped practically immediately after the accident. The testimony of Pudloski respecting the warning signals and lights was of a negative character and it was all the evidence that was offered by the plaintiffs relating thereto. In such circumstances it well may be that although there was ,a light on the tender and the bell was ringing, the driver of this truck in his enclosed cab, traveling 20 miles per hour, was not aware thereof.
 

 In
 
 Wink et al. v. Western Maryland, Railway Com
 
 pany,, 116 Pa. Superior Ct. 374, 176 A. 760, we said page 379: “These cases all hold that signals for trains approaching a highway crossing are solely for the benefit of drivers on the highway, so as to warn them of an oncoming train, and that they are not required if, as here, the train is actually on the crossing when the driver arrives. Then no other signals or warnings are necessary in the absence of a statute. There is none in this Commonwealth imposing such a duty on railroads.” See, also,
 
 Everetts v. Penna. Railroad Company,
 
 330 Pa. 321, 198 A. 796.
 

 In
 
 Venchik v. Pennsylvania Railroad Company,
 
 143 Pa. Superior Ct. 438, 18 A. 2d 118, guest passengers in a truck sued the defendant for injuries sustained at the intersection of Oregon Avenue and Swanson Street. We said there that if a train blocking a roadway is in motion the railroad is not negligent in using the crossing for the movement of its trains if it does so in a proper manner, as its rights are superior on intersecting highways. Judge Hiet, the writer of the opinion, quoted, page 443, from
 
 Grimes v. Penna. R. R. Co.,
 
 289 Pa. 320, 137 A. 451, the following: “The legal rule......has been frequently recognized and applied in this State and it has been uniformly held that where the evidence to establish lack of proper care is negative only, it is over
 
 *133
 
 come
 
 by
 
 the positive evidence to the contrary, though the latter comes from the mouths of defendant’s witnesses, and, under such circumstances, the question is not one for the jury to pass upon, where the physical facts corroborate their testimony (citing cases), which simply means that under such circumstances, the negative testimony, being controverted, does not amount to more than a scintilla, and therefore cannot prevail to establish an essential fact.”
 

 It is unnecessary to discuss the question of contributory negligence of the driver of the truck, which we think was clearly established and would bar the owner of the ear from a recovery
 
 (Schofield v. Director General of Railroads,
 
 276 Pa. 508, 120 A. 449;
 
 Mork et ux. v. Caslov et al.,
 
 327 Pa. 298, 192 A. 903), and also the driver:
 
 Milliken v. United Laundries,
 
 105 Pa. Superior Ct. 286, 161 A. 873;
 
 Nalevanko v. Marie et al.,
 
 328 Pa. 586, 195 A. 49.
 

 After a careful consideration of the circumstances accompanying this accident and the argument of able counsel we concur with the view of the learned court below that Pudloski’s own testimony, upon which the plaintiffs had to rely entirely, absolves the defendant of the charge of negligence.
 

 Judgment is affirmed.