## Highton, Appellant, *v.* Pennsylvania Railroad Company.

Argued May 5, 1938.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Charles G. Notari,* of *Marshall, Braun & Notari,* for appellant.

*Robert D. Dalzell,* of *Dalzell, McFall & Pringle,* for appellee.

OPINION BY CUNNINGHAM, J., September 28, 1938.

Plaintiff, a guest passenger in a car owned and operated by Nick Labin, brought this action of trespass to recover damages for personal injuries received when Labin's car was driven on a foggy night into defendant's locomotive standing on a grade crossing over Preble Avenue in the City of Pittsburgh, and temporarily blocking that highway.

The jury returned a verdict of $1,500 for the plaintiff, but the court below subsequently entered judgment n. o. v. for defendant, upon the ground that plaintiff's testimony convicted him of contributory negligence as a matter of law. Plaintiff has appealed.

Viewing the evidence in the light most favorable to appellant, and giving him the benefit of every inference deducible therefrom, it could be found that the acci-

dent occurred under these circumstances. On the night of July 10, 1934, appellant, while out walking with his dog about three o'clock in the morning, met Labin, accepted the latter's invitation for a lift home, got in Labin's Plymouth Coupe, and sat on the right side of the front seat. Labin drove over the Superior Street bridge and down a ramp into Preble Avenue, running north and south. Upon reaching the intersection of the ramp with the avenue, they came to a dead stop in obedience to a stop sign and then proceeded north on Preble Avenue at a speed of from ten to fifteen miles per hour. Lying along the avenue was a dense pocket of fog, rendering it difficult for either the driver or appellant to see more than fifteen feet ahead of them, although the headlights of Labin's car were, according to his testimony, in good condition. Appellee's siding, running east and west, into the plant of the American Brake Shoe Company, crossed Preble Avenue at grade, some four hundred feet north of the ramp entrance, and at right angles to the avenue. During the process of uncoupling cars, its engine and tender stood, facing west, on this crossing, and completely blocking the avenue.

According to appellant's evidence, which for the purposes of this appeal we must accept as true, no warning of any kind, by lights, bell or lanterns, was given of the presence of the locomotive upon the crossing.

Appellant's version of the accident may be gathered from these excerpts from his direct examination: "Q. Now, Mr. Highton, what did you do after the automobile turned into Preble Avenue? A. Well, after we got started out a short distance I said 'Nick, be careful. This is a very bad night, or morning rather. Foggy.' ...... Q. Then what happened? A. When we got as far as I thought the crossing might be, of course I could not tell exactly, I said to Nick, 'There might be something down there. You had better watch,' because I

have been past there—I have been traveling there for about twenty-five years. ...... Q. As you approached the scene of the accident, what happened? A. I saw something loom up in front of me. I almost knew what it was because I expected an engine to be there, if there had been a light, but there was no light, and when I saw this loom up, I said to Mr. Labin, 'Look out Nick.' Like that. And all of a sudden he swerved to the left, and there was a crash, and that is all I know about it."

The right front of the coupe struck the drive shaft of the engine, crushing in the front of the car and rendering both appellant and Labin unconscious. As a result of the collision appellant suffered the injuries for which he sought to hold appellee liable.

While appellant was familiar with the scene of the accident, having "been traveling there for about twenty-five years," the driver, Labin, had not lived in the neighborhood recently. He testified appellant told him to be very careful as it was foggy and shouted, "Look out, Nick," just as the engine loomed in front of them.

Appellee's witnesses gave an entirely different description of the occurrence. According to them, the weather was clear and dry, a flagman stood in the street south of the engine swinging a white light as a warning and there were other lights on the engine plainly visible. They testified Labin's car came on at a high rate of speed (disregarding the flagman with a lantern who was finally obliged to run to save himself) until within fifty feet of the engine when Labin jammed on his brakes and skidded into the engine. The coupe struck the locomotive with such force as to smash the entire front of the car and break off an inch and a half bolt from the side of appellee's engine.

No matter how convincing the testimony for appellee may have been, it is not within our province to pass upon the credibility of the conflicting witnesses or de-

termine the weight of the evidence. Appellant got a verdict and we must accept his version of the circumstances and reject appellee's insofar as it is unfavorable to appellant. For present purposes, we assume the railroad company was negligent in that it failed to give proper warning of the presence of its engine on the crossing.

It is clear under all the testimony on appellant's side of the case that Labin, the driver of the car, was guilty of contributory negligence as a matter of law. In the language of Mr. Justice WALLING, in *Serfas v. Lehigh and New England Railroad Co.*, 270 Pa. 306, 113 A. 370, 14 A. L. R. 791, "The [driver] openly violated the inflexible rule requiring the traveler to stop, look and listen before entering upon a railroad track." The rule applies to entering upon sidings as well as upon main tracks: *Peoples v. Penna. R. R. Co.*, 251 Pa. 275, 96 A. 652. The character of the rule and the effect of a failure to observe it have been thus described in *Greenwood v. Railroad Co.*, 124 Pa. 572, 578, 17 A. 188, "It is a clear and certain rule of duty, and a departure from it is more than evidence of negligence; it is negligence per se," and in *Aiken v. P. R. R. Co.*, 130 Pa. 380, 395, 18 A. 619, "It is not a rule of evidence, but a rule of law, peremptory, absolute and unbending; and the jury can never be permitted to ignore it, to evade it, or to pare it away by distinctions and exceptions."

Neither Labin's statement that the existence of the tracks had "slipped [his] mind," nor the prevailing darkness and fog, furnish any excuse for his failure to obey the rule. See *Serfas v. Lehigh & New England R. R. Co.*, supra.

In that case the decedent was crossing a siding at a rate of from fifteen to twenty miles per hour. The excuse for not stopping, looking and listening was the darkness. In the course of the opinion of the Supreme Court it was said: "It is the duty of a chauffeur travel-

ing by night to have such a headlight as will enable him to see in advance the face of the highway and to discover grade crossings, or other obstacles in his path, in time for his own safety, and to keep such control of his car as will enable him to stop and avoid obstructions that fall within his vision. For example, it is the chauffeur's duty to keep his car under such control that whenever his headlight has brought a grade crossing into view he can stop before reaching it. ...... Should we hold that the traveler need not stop to look and listen because of darkness, then we should logically extend the same immunity in case of a fog or snow storm, or when the crossing was dimmed by dust or otherwise, even in the daytime. To so hold would suspend the rule when needed most, and practically destroy it. To this we cannot consent."

See also *Wink et al. v. Western Md. Rwy. Co.,* 116 Pa. Superior Ct. 374, 176 A. 760, where the plaintiff drove at night and through a fog into the side of a freight train moving over a grade crossing, and *McCann v. P. R. R. Co.,* 119 Pa. Superior Ct. 205, 180 A. 750, where the plaintiff drove his automobile on the tracks of the defendant company at night and without stopping.

We think it equally clear that appellant, under his own testimony, was likewise guilty of contributory negligence as a matter of law.

The duty of care resting upon a guest passenger generally, was recently summarized by our Supreme Court in *Landy v. Rosenstein et al.,* 325 Pa. 209, 188 A. 855, at page 214 as follows: "Where there are dangers reasonably manifest and *known* to the guest, and he has an opportunity to influence the situation for safety, *if he sits by without warning the driver,* and permits himself to be driven carelessly to his injury, or if he *joins with the driver in testing danger,* this is negligence which will bar recovery by him: *Hardie v. Barrett,* 257 Pa. 42; *Minnich v. Easton Trans. Co.,* 267 Pa.

200; *Davis v. American Ice Co.*, 285 Pa. 177." (Italics supplied) See also, to the same effect, *Kilpatrick v. Phila. Rapid Transit Co.*, 290 Pa. 288, 294, 138 A. 830; *Campagna v. Lyles*, 298 Pa. 352, 357, 148 A. 527; *Keller v. Keystone Furniture Co.*, 132 Pa. Superior Ct. 547, 1 A. (2d) 562.

Under this general rule, and in conformity with it, our appellate courts have held that a guest passenger, if he is *aware* of the existence of a railroad crossing, is, like the driver, required, himself, to obey, and do what he can under the circumstances to see that the driver obeys, the peremptory rule requiring all persons about to enter upon a railroad track to stop, look and listen: *Schwenk v. Penna. R. R. Co.*, 315 Pa. 434, 174 A. 1.

When appellant's testimony is read in the light of these principles of law we have this situation. He had been familar with the location, and use by appellee, of this crossing for many years. When Labin started the automobile along Preble Avenue from a dead stop, at the entrance into the avenue from the ramp, appellant knew that after traveling a distance of only four or five hundred feet they would enter upon the railroad crossing. With the fullest possible "opportunity to influence the situation for safety," all appellant did was say to Labin, as they started toward the crossing, "Nick, be careful. This is a bad night. ...... Foggy"; and when they "got as far as [appellant] thought the crossing might be," he added, "There might be something down there. You had better watch."

The mere recital of appellant's own words demonstrates that he made no effort whatever to warn, or even remind, Labin they were about to enter upon railroad tracks, and that he failed to request, let alone demand, that they stop, look and listen. It would be difficult for anyone, except possibly appellant, to give any reason for his failure to tell Labin that the "something" which might be "down there" would be an engine or cars, but

he made no attempt to explain the enigmatic nature of his warning.

Even if he had reminded Labin of the location of the crossing, and the possibility of a train standing upon or approaching it, that would not have been a sufficient performance of his duty to do everything possible, under the circumstances, to compel Labin to stop where both of them might look and listen. The most that can be said of the warnings above quoted is that they were merely cautions to exercise the kind of care required of one driving on a foggy night along a city street free from railroad crossings.

Moreover, it is quite apparent from appellant's testimony that he had no intention of having Labin stop the car before driving upon the track unless he found on their arrival at the crossing that it was blocked by an engine. His statement was that he "expected an engine to be there, if there had been a light, but there was no light." The only reasonable inference deducible from his testimony seems to be that he considered himself under no obligation to tell Labin the crossing was there and warn him to stop before driving upon it, unless he saw a light indicating the presence of an engine blocking the avenue.

In *Burkman, Exrx., v. Anderson,* 324 Pa. 206, 188 A. 287, Mr. Justice SCHAFFER stated (page 210), " 'A guest in the automobile is charged with the same duty as its driver, if he knows it is about to cross the tracks ......': *Schwenk v. Penna. R. R. Co.,* [supra]. A guest in an automobile who sits beside the driver with full knowledge of the surroundings and makes no protest, joins in testing the danger and is charged with contributory negligence: *Morningstar v. N. E. Penna. R. R. Co.,* 290 Pa. 14, 137 A. 800; *Rhodes v. Penna. R. R.,* 298 Pa. 101, 147 A. 854; *Curry v. Riggles,* 302 Pa. 156, 153 A. 325."

In the above cited case of *Rhodes v. Penna. R. R. Co.,* our Supreme Court said: "One riding in an automobile

as a guest who knows or is presumed to know of a manifest danger and fails to avail himself of an opportunity to control the situation, cannot recover if injured."

Whether Labin was aware of or had forgotten the location of the crossing, it was the clear legal duty of appellant to so control Labin's conduct by every means reasonably within his power as to prevent the driving of the automobile upon the crossing without first stopping at a place which would afford its occupants an opportunity to look and listen. Neither by word nor action did he make any effort toward the performance of this duty; his silence and inaction with respect to the crossing amounted, under the existing circumstances, to negligence per se, and as a matter of law defeated his right to recover for his injuries.

Judgment affirmed.