Blaskey, Appellant, *v.* Pennsylvania Railroad Company.

Venchik, Appellant, *v.* Pennsylvania Railroad Company.

Argued October 11, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Milford J. Meyer,* with him *Robert M. Bernstein,* **for** appellant.

*Theodore Voorhees,* with him *Harrison H. Clement* and *Barnes, Myers & Price,* for appellee.

OPINION BY PARKER, J., January 30, 1940:

In these two actions in trespass to recover damages for personal injuries, the plaintiffs were guest passengers in a truck driven by the owner when the truck collided with a freight train standing on a public crossing. The facts in the two cases are identical and the cases were tried by one jury. We will therefore dispose of the

appeals in one opinion. At the conclusion of plaintiffs' testimony the trial judge entered compulsory nonsuits which the court subsequently refused to remove. We are of the opinion that nonsuits should not have been granted.

We will refer to the testimony in a light most favorable to plaintiffs, as we are required to do in consideration of a motion to take off a nonsuit. The truck in which the plaintiffs were riding was being driven by the owner on Oregon Avenue, in Philadelphia, at about 3 A. M. on September 9, 1934. The night was dark, it had been raining, there was a very heavy fog, and there was so much moisture in the air that the guests could see, from where they were sitting, very little if anything, due to the condition of the windshield in front of them. The car was equipped with one windshield wiper located in front of the driver and even at that location visibility, with the assistance of driving lights, was limited to 25 or 30 feet. The visibility was so poor that a witness who crossed the street within a quarter of a block of a freight train crossing the street had to depend on hearing to account for movements of the train, and he could not see a standing automobile until he came close to it.

Oregon Avenue, 84 feet in width, is crossed at right angles by Swanson Street upon which defendant maintained two tracks. Neither of the plaintiffs had ever been in that vicinity and they had no previous knowledge of the existence of a railroad crossing at that point. Blaskey testified that the truck was moving at a rate of about 20 or 25 miles an hour, but Venchik could not fix its speed. Suddenly the driver veered his car to the left and in an instant it collided with a freight train which was standing on the street and blocking passage, with resulting personal injuries to each of the plaintiffs. When the brakes were applied the guests could only see, by looking through the space in front of the driver, a

black object ahead of them. At the time the driver veered his car he was about 25 or 30 feet from the train.

Plaintiffs produced evidence tending to show that the train had been standing on the crossing for eight or ten minutes. We do not agree with the conclusion of the court below that there was not sufficient evidence to sustain a finding by a jury that the train had been blocking the crossing for that length of time. While plaintiffs' witness depended upon hearing to fix the time when the train stopped, we are satisfied that his testimony was sufficient to make the length of the stopping and continued blocking of the street a question of fact for the jury. Sight is not the sole method of perception recognized by law. This principle is recognized in the rule that one must stop, look, and *listen* before crossing a railroad track. "It is as much the traveler's duty to listen as to look; he is as bound to hear what is audible as to see what is visible. Because of darkness or other obstructions to view, the sense of hearing is often vital": *Rhodes v. Penna. R. R. Co.*, 298 Pa. 101, 104, 147 A. 854; *Garis v. Lehigh & N. E. R. R. Co.*, 324 Pa. 149, 152, 188 A. 76.

The plaintiffs, to sustain their charge of negligence, relied in the main upon the Act of March 20, 1845, P. L. 191, §1, as amended by Act of June 9, 1911, P. L. 726, §1 (67 PS §452), and various decisions establishing responsibility for damages occasioned by blocking a public highway. The Act of 1911 provides: "It shall not be lawful for any railroad company to block up the passage of any crossings of public streets or roads, or obstruct the said crossings, with their locomotives or cars."

As stated in *Purol, Inc., v. Great East. Syst., Inc.*, 130 Pa. Superior Ct. 341, 344, 197 A. 543: "The mere fact that the plaintiff on the one hand, or the defendant on the other, was engaged in violating the law in a given particular at the time of the happening of the accident, will not bar the right of action of the former, nor make

the latter liable to pay damages, unless such violation of law was an efficient cause of the injury."

The bearing which a violation of this statute has on a charge of negligence has been considered by the Supreme Court in a number of cases. In *Todd v. Phila. & R. Ry. Co.,* 201 Pa. 558, 51 A. 332, the defendant's train was blocking a crossing and the plaintiff, a minor, waited for a time for the crossing to be cleared and then started to climb over the train. As he was doing so the train was started without warning and the boy was injured. The court said (p. 560) : "The obstruction of a street crossing by a railroad company, in unnecessarily stopping its cars upon it, is unlawful. In plain terms, the Act of March 20, 1845, declares the blocking up of a public crossing with locomotives or cars to be illegal, and prohibits it, under a penalty. The obstruction complained of in this case was prima facie evidence that the defendant was guilty of negligence, and, to establish its innocence, the burden was upon it to satisfy a jury that the obstruction had not continued for an unreasonable time, and could not have been avoided by the exercise of proper care and diligence. In other words, the burden was upon the company to prove that, under all the circumstances, there had not been an absence of care on its part. No such proof was offered; if any had been presented, the sufficiency of it would have been for the jury."

To the same effect are *Phila., B. & W. R. R. Co. v. Layer,* 112 Pa. 414, 3 A. 874, *Rauch v. Lloyd & Hill,* 31 Pa. 358, 370, and *Penna. R. R. Co. v. Kelly,* 31 Pa. 372. It is of importance to note that in the Kelly case it was urged that the obstruction was the remote and not the proximate cause of the injury. The Supreme Court there said (p. 377) : "Now adjust the acts of stopping and starting ever so nicely to the maxim *causa proxima,* and not a step of advance is taken by the defence, for the company are equally liable for both causes. If you say it was the starting, and not the stopping of the

cars, that did the mischief, the question of plaintiff's negligence in suffering his son to be under them is still in the case, but you have made no progress in the defence, because if there was wrong in the start, the company are as responsible for it as for any wrong in the stop. The nature of the case, however, does not admit of this nice distinction. The conduct of that train of cars was one thing—intrusted as a special duty to one man—and if his mismanagement injured the plaintiff, without fault on the plaintiff's part, the company are liable for it. To split such a single, simple, individual cause into two causes, and to christen them *proxima* and *remota,* is to embarrass ourselves unnecessarily, and to obstruct the course of justice." This answers the argument of appellee that in those cases the negligence was predicated on the starting and not on the obstruction as well as the contention that the standing of the train was not a proximate cause of the injury.

The Layer case is also directly in point, it being there said (p. 418) : "Nor had the company any right to obstruct this crossing for an unreasonable time, if, by the exercise of proper care and diligence, it could be avoided; and whether the street was thus negligently and unnecessarily obstructed, was a fact bearing upon the question of the defendant's liability."

It is also suggested by appellee that the Act of 1845 was intended only to facilitate the movement of traffic and to prevent blockades causing congestion and delay (*Jones v. A. T. & S. F. Ry. Co.,* 129 Kan. 314, 282 P. 593), but that contention is answered by the cases last cited. We agree that one of the objects of the statute was to facilitate the movement of traffic on the highways, but the orderly and safe passage of vehicles is an incident to that general purpose. The small boy who found the crossing unlawfully blocked and was injured by the concurrent and negligent starting of the train was damaged as a result of the blocking of the highway, and the Supreme Court refused to subdivide the ele-

ments of that act describing some as remote and others as proximate causes. The unlawful blocking was the predominant cause which started the process and it continued as an active cause. Here the situation is even clearer for the unlawful blocking was the originating, active, and vital cause of the collision.

Considering alone, for the time being, the question of defendant's negligence we cannot avoid the conclusion that there was sufficient evidence in plaintiffs' cases to support a finding if made by the jury that defendant was negligent in blocking the highway for eight or ten minutes and that such negligence was a proximate cause of the collision with resulting injuries to plaintiffs. To reach a different conclusion is to ignore the numerous cases decided by our Supreme Court. In the cases cited by appellee from other jurisdictions there are several distinguishing circumstances. In some of them there was no statute involved making it unlawful to blockade a crossing and, where there was a statute involved, the decisions were actually predicated on the contributory negligence of the plaintiffs, a feature of the case we have not yet considered.

Were the plaintiffs guilty of such contributory negligence that the trial judge was justified in saying as a matter of law that they were negligent? These plaintiffs had no part in the control or management of the car and the negligence of the driver and owner under such circumstances may not be imputed to an invited guest who had no opportunity to control him: *Kilpatrick v. Phila. Rapid Tr. Co.,* 290 Pa. 288, 294, 138 A. 830. "The weight of all the authorities seems to be that the guest is responsible for inaction only when he knows of a danger, or where the evidence is such that, from the nature of the situation itself, it appears that he must have realized its peril": *Frank v. Markley,* 315 Pa. 257, 259, 173 A. 186.

These plaintiffs had never been in that vicinity before, they had no knowledge of the existence of the crossing,

and the weather conditions were such that they could not see the road in front of them. They were at the time engaged in conversation and assumed that the driver would properly operate the truck, as they had a right to assume. "We will not declare a person guilty of contributory negligence as a matter of law unless the evidence of his negligence is clear and unmistakable": *Schildnecht v. Follmer Tr. Co.*, 330 Pa. 550, 552, 199 A. 220. There is not in this record such evidence that the court could say as a matter of law that the plaintiffs were negligent. That was a question to be submitted to the jury and it involved a consideration of all the circumstances, among others the unusual prevailing conditions, the condition of the windshield, and the speed of the car in which they were riding.

"The tendency of our decisions is to hold a passenger responsible for his actual negligence in joining with the driver in testing a danger he knows exists, and not for the result of mere inaction in failing to discover dangers of which he is ignorant, but might have discovered had he been giving attention to the roadway ahead of him": *Azinger v. P. R. R. Co.*, 262 Pa. 242, 250, 105 A. 87.

An examination of several of the cases upon which the appellee relies will show, we believe, not only that they do not support its contention but that they are in harmony with our conclusions. It has frequently been said that the presence of a train of cars on a crossing is a sufficient notice, under the facts of the particular case, that the crossing is occupied. Such notice might well be sufficient to convict the driver of a car of contributory negligence and it has been so held both by this court and by the Supreme Court in certain cases to be, in fact, sufficient. But we may not impute the negligence of the driver to guests, and the giving of such notice by the presence of the cars does not condone the negligence of the railroad company in blocking the crossing. If the railroad company, on the trial of the case,

is able to satisfy the jury that it had a right to occupy the crossing as it did and for the length of time it did, then the question of notice may become relevant.

In *Wink v. Western Md. Ry. Co.*, 116 Pa. Superior Ct. 374, 176 A. 760, one of the plaintiffs drove his father's car into the thirty-ninth car of a long *moving* freight train at a highway crossing. Father and son joined in one action, the claim upon the part of the father being in part for damage to the car. We held that the son was barred in any event by his contributory negligence, but that neither the father nor son could recover as no negligence on the part of the defendant had been shown. A controlling and distinguishing element in that case meets us at the threshold. There the train was moving across a highway where it had superior rights and the railroad company was not violating a statute in so doing. It was not *blocking* a highway as that word is used in the Act of 1845. Not only so, but we there concluded that there was no other evidence that would support a finding that the railroad company was negligent. It is also to be observed that even with respect to notice a moving train gives warning to both eye and ear, a stationary train only to the eye. There is nothing inconsistent with our conclusion in that case and the one at which we have arrived here.

In *Weiner v. Reading Co.*, 119 Pa. Superior Ct. 375, 181 A. 381, plaintiff also drove his car into a moving train, and that case and *Everetts v. Penna. R. R. Co.*, 330 Pa. 321, 198 A. 796, adopted and followed the reasoning in the Wink case. In *Highton v. Penna. R. R. Co.*, 132 Pa. Superior Ct. 559, 1 A. 2d 568, the plaintiff, a guest passenger, had been traveling over a grade crossing for twenty-five years, was familiar with it, and the circumstances were such that it was clearly the duty of the guest to insist that the driver stop before crossing the railroad tracks.

On the other hand, our conclusions are supported in principle by those decisions which have sustained a re-

474

covery by a guest against the owner of a truck or automobile blocking a highway. In those cases, as in the present ones, the drivers were guilty of contributory negligence but the guests were allowed to recover. The opinion of Mr. Justice MAXEY in *Harkins v. Somerset Bus Co.*, 308 Pa. 109, 162 A. 163, dealt with the principles which we have here followed. Also see *Geiger v. Dowdy*, 111 Pa. Superior Ct. 485, 170 A. 420; *Meads v. Rutter*, 122 Pa. Superior Ct. 64, 184 A. 560; *Janeway v. Lafferty Bros.*, 323 Pa. 324, 185 A. 827; *Gaber v. Weinberg*, 324 Pa. 385, 188 A. 187; *Cormican v. Menke*, 306 Pa. 156, 159 A. 36, where the windshield was clouded so that the guest's view of the road was obstructed; *Simrell v. Eschenbach*, 303 Pa. 156, 154 A. 369.

We are of the opinion that the cases were not so clear that the court was justified in granting nonsuits and that the plaintiffs made out prima facie cases when they showed that the train had been occupying the crossing for eight or ten minutes. This cast upon the defendant company the burden of furnishing evidence in justification of the blocking of the crossing.

Judgment in each case is reversed with a venire facias de novo.