Smalich et al., Appellants, *v.* Westfall.

Argued October 6, 1969. Before Bell, C. J., Jones, Cohen, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Morton B. DeBroff,* with him *David R. Gold,* for appellant.

*Carl E. Fisher,* with him *Robinson, Fisher & Long,* for appellee.

Opinion by Mr. Justice Eagen, October 9, 1970:

Two automobiles collided in Westmoreland County. One of the vehicles, owned by Julia Smalich, was operated by Felix Rush Westfall. Julia Smalich and her minor son, Michael, were passengers in this automobile at the time. The other vehicle involved was operated by Stephanna Louise Blank. Julia Smalich suffered injuries in the collision which caused her death. Michael Smalich was injured, but recovered.

This action in trespass was later instituted, naming both Westfall and Blank as defendants. The estate of Julia Smalich sought damages in both a wrongful death action and a survival action. Marco Smalich, the guardian of the minor, claimed damages for the minor's

injuries on behalf of the minor and on his own behalf as guardian.

At trial, the jury returned a verdict in favor of all plaintiffs and against both defendants. Damages were awarded in the wrongful death action in the sum of $1025; in the survival action in the sum of $2000; in the guardian's action in the sum of $166.50; and in the minor's action in the sum of $20,000. Post-trial motions were timely filed by defendant Blank, seeking judgment notwithstanding the verdict in the actions on behalf of the Smalich Estate and a new trial in the actions on behalf of the minor and the guardian. Both motions were granted by the court en banc below. The plaintiffs appealed.

## The Minor's Action

In this instance, the court below awarded a new trial because it concluded that the verdict was against the weight of the evidence, and was also excessive. We have said many times that the grant of a new trial lies within the inherent power of the trial court, and on appeal we will not interfere with the exercise thereof, unless there has been a clear abuse of discretion or an error of law which necessarily controlled the grant of the new trial: *Kralik v. Cromwell*, 435 Pa. 613, 258 A. 2d 654 (1969); *Getz v. Balliet*, 431 Pa. 441, 246 A. 2d 108 (1968); *Guzman v. Bloom*, 413 Pa. 576, 198 A. 2d 499 (1964). An examination of the record fails to persuade us that the court abused its discretion in awarding a new trial in the actions involving the minor's injuries, and we will, therefore, affirm its order in this respect.

## Actions on Behalf of the Estate

The trial jury found that Westfall's negligent operation of the Smalich automobile was a proximate

412

cause of the collision. That the trial record amply supports this finding is not and cannot be questioned. After trial, the court en banc ruled that, under the facts, the contributory negligence of Westfall must be imputed to the owner of the automobile as a matter of law, and this precluded recovery by the Smalich Estate against defendant Blank. This conclusion of the court below was based on our ruling in *Beam v. Pittsburgh Railways Co.*, 366 Pa. 360, 77 A. 2d 634 (1951), and admittedly was clearly dictated by that decision.

In *Beam* we held that where the owner of an automobile is present while it is being negligently operated by another, there is a presumption that the owner of the vehicle has the power to control it, and, in the absence of evidence to the contrary, a relationship of principal and agent *or* master and servant exists between the owner and driver, because of which the driver's contributory negligence is imputed to the owner, barring the owner from recovering for injuries caused by the negligence of a third person. In considering the instant case, we have re-examined *Beam* and conclude that, as to the portion of the holding above set forth, it should be overruled and no longer be recognized as the law of this Commonwealth.

First, a plaintiff ought not to be barred from recovery against a negligent defendant by the contributory negligence of a third person unless the relationship between the plaintiff and the third person is such that the plaintiff would be vicariously liable as a defendant for the negligent acts of the third person: Prosser, The Law of Torts §73 (3d ed. 1964). See also, Restatement (Second), Torts §§485, 486 and 491 (1965). Placed in the context of this case, a driver's negligence will not be imputed to a passenger, unless the relationship between them is such that the passenger would be vicariously liable as a defendant for the

driver's negligent acts: See *Beam v. Pittsburgh Railways Co.,* supra. The relationship between the passenger and the driver is therefore a very critical one, worthy of careful analysis and consideration.

At least three relationships could exist between an owner-passenger and a driver of an automobile: (1) bailor-bailee; (2) principal-agent; and (3) master-servant.

A bailment is a delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he reclaims it: *Wright v. Sterling Land Co.,* 157 Pa. Superior Ct. 625, 43 A. 2d 614 (1945). As a general rule, a bailor is not liable for the negligence of the bailee in the operation of a bailed chattel: *Brower v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440, 177 A. 826 (1935); *McColligan v. Penna. R.R. Co.,* 214 Pa. 229, 63 A. 792 (1906); *Hajduk v. Fague,* 200 Pa. Superior Ct. 55, 186 A. 2d 869 (1962). Therefore in an action in trespass by a bailor to recover for damage to the thing bailed, caused by the negligent act of a third party, the contributory negligence of the bailee is no defense, unless the bailee was at the time acting as the bailor's servant: *Commercial Banking Corp. v. P.T.C.,* 162 Pa. Superior Ct. 158, 56 A. 2d 344 (1948); Restatement (Second), Torts §486 (1965); Prosser, The Law of Torts §73 (3d ed. 1964). And the fact that a bailor shares the use of the thing bailed (here, rides as a passenger in the automobile) with his bailee does not necessarily cause a termination of the bailment and create a new relationship: *Rodgers v. Saxton,* 305 Pa. 479, 158 A. 166, 80 A.L.R. 280 (1931).

Agency is the relationship which results from (1) the manifestation of consent of one person to another

that (2) the other shall act on his behalf and subject to his control, and (3) consent by the other so to act: *Chalupiak v. Stahlman,* 368 Pa. 83, 81 A. 2d 577 (1951) ; Restatement (Second), Agency §1 (1) (1958). Such agency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary: *Rosenberg v. Cohen,* 370 Pa. 507, 88 A. 2d 707 (1952) ; Restatement (Second), Agency §1, comments a and b (1958). "The right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times . . . . Further, the principal has power to revoke the agent's authority, although this would constitute a breach of his contract with him . . . . The control of the principal does not, however, include control at every moment; its exercise may be very attenuated and, as where the principal is physically absent, may be ineffective:" Restatement (Second), Agency §14, comment a. Since an agent who is not a servant is not subject to any right of control by his principal over the details of his physical conduct, the responsibility rests upon the agent alone, and the principal is *not* liable, for harm caused by his unauthorized negligent physical conduct: *Commonwealth v. Minds Coal Mining Corp.,* 360 Pa. 7, 60 A. 2d 14 (1948) ; Restatement (Second), Agency §250 (1958). Thus it has long been said to be the general rule that there is no vicarious liability upon the principal in such case: Prosser, The Law of Torts §70 (3d ed. 1964).

"A master is a species of principal, and a servant is a species of agent:" Restatement (Second), Agency §2, comment a. "A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the *physical conduct* of the other in the performance of the service. A ser-

vant is an agent employed by a master to perform service in his affairs whose *physical conduct* in the performance of the service is controlled or is subject to the right to control by the master:" Restatement (Second), Agency §2 (1) and (2) (Emphasis added.) Thus a master not only controls the results of the work but also may direct the manner in which such work shall be done, and a servant, in rendering the agreed services, remains entirely under the control and direction of the master: *Joseph v. United Workers Assn.,* 343 Pa. 636, 23 A. 2d 470 (1942); *McColligan v. Penna. R.R. Co.,* supra. "Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal . . . :" *Commonwealth v. Minds Coal Mining Corp.,* supra, at 17. Because a master has the right to exercise control over the physical activities of the servant within the time of service, he *is* vicariously liable for the servant's negligent acts committed within the scope of his employment: Restatement (Second), Agency §219 (1958); Prosser, The Law of Torts §69 (3d ed. 1964). Therefore, the master is likewise barred from recovery against a negligent defendant by the contributory negligence of his servant acting within the scope of his employment: Restatement (Second), Torts §486 (1965); Prosser, The Law of Torts §73 (3d ed. 1964). *Beam,* supra, correctly so stated this law applicable to a master.

In essence, we now recognize that, contrary to what we have said in many prior automobile accident cases,[1]

---

[1] E.g., *Beam v. Pittsburgh Railways Co.,* supra; *Mazur v. Klewans,* 365 Pa. 76, 73 A. 2d 397 (1950); *Von Cannon v. P.T.C.,* 148 Pa. Superior Ct. 330, 25 A. 2d 584 (1942); and *Spegele v. Blumfield,* 120 Pa. Superior Ct. 231, 182 A. 149 (1935).

only one of the three relationships discussed above, that of master-servant, gives rise to vicarious liability for negligence.[2] Perhaps many of the harsh results sometimes associated with the imputation of contributory negligence can be attributed to our mistaken assumption that a principal is vicariously liable for the negligent acts of his agent. We therefore now state unequivocally that only a master-servant relationship or a finding of a joint enterprise[3] will justify an imputation of contributory negligence.

We have serious doubt that, in the ordinary situation, the mutual understanding of the owner-passenger and the driver is that the owner-passenger reserves a right to control over the physical details of driving or that the driver consents to submit himself to the control of a "back-seat driver." It seems more reasonable that the mutual understanding is that the driver will use care and skill to accomplish a result, retaining control over the manner of operation yet subject to the duty of obedience to the wishes of the owner-passenger as to such things as destination. Such would only constitute an agency relationship and not one of master-servant, although there are undoubtedly situations where the understanding might well be such as to con-

---

[2] The necessity of a master-servant relationship seems to have been recognized in the older cases. See, e.g., *Lassock v. Bileski*, 94 Pa. Superior Ct. 299 (1928) ; *McMahen v. White*, 30 Pa. Superior Ct. 169 (1906) ; and *Connor v. Penna. Railroad Co.*, 24 Pa. Superior Ct. 241 (1904).

[3] While the existence or absence of a joint enterprise was not raised here or in the court below, we have considered the record with this question in mind. If the proof established such a relationship existed, this would preclude recovery by the Smalich Estate, and if the lower court reached the right result albeit for the wrong reason, its decision would be affirmed. *Taylor v. Churchill V. Country Club*, 425 Pa. 266, 228 A. 2d 768 (1967). However, we are satisfied that the evidence did not establish a joint enterprise. See Restatement (Second), Torts §491 (1965).

stitute a master-servant relationship.[4]  All that we now hold is that the character of the relationship created by the parties must be determined from their express agreement or from the circumstances, which may be disclosed at trial.  "The mere presence of the owner in an automobile while it is being driven in a negligent manner by another does not *necessarily* make him liable for an injury caused thereby, or impute to him the driver's negligence:"[5] *Beam v. Pittsburgh Railways Co.*, supra, at 370.  Nor will it any longer create a presumption of a master-servant relationship.

We do not mean, however, that the presence of the owner is entirely irrelevant, or that there is no legal significance that an owner present in his car has the power to control it.[6]  These are relevant in determining whether the owner-passenger has been actually negligent himself[7] in failing to control the conduct of the driver.  See Restatement of Torts, §495.  Any passenger is required to exercise reasonable care for his own safety, and will be barred from recovery if he unrea-

---

[4] For example, if the driver were inexperienced or learning, a prospective purchaser or driving under actual directions.

[5] Analogous hereto are Restatement (Second), Torts §487 (husband and wife), §488 (parent and child), §489 (bailee) and §490 (passenger or guest in a vehicle).

[6] See *Beam v. Pittsburgh Railways Co.*, supra; *Mazur v. Klewans*, supra headnotes 3 and 6; *Von Cannon v. P.T.C.*, supra headnote 8; and *Spegele v. Blumfield*, supra headnote 1.

[7] The statement seems to have actually been intended to apply to this situation.  It first appeared in *Bell v. Jacobs*, 261 Pa. 204, 208, 104 A. 587 (1918) in this context: "It was defendant's car and he acquiesced in what Fink, who was acting for him, did, and cannot be excused because he was not personally at the wheel.  A man out riding in his car is not relieved from responsibility for its management because, with his permission, another is acting as driver; and this is especially so where the owner tacitly assents to the manner in which the car is driven.  There is a presumption, not here rebutted, that an owner present in his car has power to control it."

sonably fails to warn the driver of a danger which he discovers or to make use of an ability to control the negligence which he may possess: *Landy v. Rosenstein,* 325 Pa. 209, 188 A. 855 (1937) ; *Highton v. Penna. Railroad Co.,* 132 Pa. Superior Ct. 559, 1 A. 2d 568 (1938) ; Restatement (Second), Torts §495 (1965). "Any circumstance which gives the plaintiff reason to believe that his advice, directions, or warnings would be heeded is important in determining whether he is barred from recovery by his failure to attempt to give them. . . . The fact that the plaintiff owns the vehicle or the chattel which to his knowledge is being carelessly used, is . . . of importance, since one who is driving another's vehicle or using his chattel is more likely to pay attention to the owner's directions than he would be to the directions of a guest in his own car:" Restatement (Second), Torts §495, comment e (1965). This differs from imputed contributory negligence, where due to the relationship between the passenger and driver, the negligence of the driver is in all cases imputed to the passenger. Under this rule, "in order to bar the plaintiff from recovery . . ., it is necessary that the plaintiff know or should know that it is essential for his safety to control the conduct of the third person:" Restatement (Second), Torts §495, comment d (1965).

We repeat, the precise nature of the relationship between the owner-passenger and the driver, under the evidence, presents a question of fact which it is the exclusive function of the jury to determine, except where the facts are not in dispute and the evidence is direct and certain, presenting no question of credibility and leaving no sufficient ground for inconsistent inferences of fact: *Joseph v. United Workers Assn.,* supra. In this case, the lower court charged the jury on the issue of imputed contributory negligence in accordance

with our decision in *Beam,* supra, and, in so doing, granted the following specific requests for charge of the plaintiffs: "No. 6: The mere presence of a car owner in that automobile while it is being driven by another, does not necessarily mean that the operation of the car is within the control of the owner. No. 7: If you find that the decedent, Julia Smalich, relinquished her right to control her automobile, either expressly or impliedly, by words, actions or conduct, and at the time of the accident had transferred that right to control the car to the defendant Westfall, then you should find that any conduct by defendant Westfall cannot affect or bar the right of the decedent's personal representative to recover in this case." The jury rendered a verdict for the plaintiffs against defendant Blank, and, therefore, must have determined that Julia Smalich had relinquished her right to control her automobile to defendant Westfall. On the facts, such a conclusion is justified under the law as we have now stated it. Judgments n.o.v. should not, therefore, have been entered in favor of defendant Blank and against the Smalich Estate. These judgments are vacated, and the record remanded with directions to enter judgments in favor of the Smalich Estate and against defendant Blank in accordance with the jury's verdict.[8]

The order of the court below awarding a new trial in the actions involving the minor is affirmed. Judgments n.o.v. in the actions on behalf of the Smalich Estate are vacated and the record remanded with directions.

Mr. Chief Justice BELL concurs in the result.

---

[8] Since the jury rendered a verdict against defendant Blank when the charge was more favorable to her than a charge in accordance with our present opinion would be, defendant Blank has not been harmed hereby.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I am pleased that the Court today partially repudiates the imputed contributory negligence doctrine. I am unable to join the majority's opinion, however, because I believe that in adopting a limited "both ways" test, it falls short of accomplishing the degree of reform necessary in this area. I am particularly disturbed that the majority, in continuing to apply the doctrine to the master-servant relationship, places so much weight on the physical control a master has over a servant. I therefore can only concur in the result.

The imputed contributory negligence doctrine has been criticized on two grounds. For one, it is quite obvious that the doctrine is based on the absurd fiction that the owner-passenger has the "right" to control the vehicle.[1] In the real world, however, a passenger can in no safe way exercise operational control over the vehicle in which he rides, even if he is the owner.[2] But the imputed contributory negligence doctrine requires the owner-passenger not only to constantly advise the driver, but also to seize the wheel if need be. For if

---

[1] The doctrine of imputed contributory negligence, in the setting involved in this case, has its roots in the 1849 English case of *Thorogood v. Bryan*, 8 C.B. 115, 137 Eng. Rep. 452. *Thorogood* was a suit by a passenger of a public omnibus against the owner of another omnibus. The passenger was denied recovery because the driver of her omnibus, as well as the other driver, was negligent. The theory was that the passenger had a measure of control over the driver; he had "employed" the driver and "[i]f he is dissatisfied with the mode of conveyance, he is not obliged to avail himself of it." Id. at 132. As Dean Prosser has written, this was a "nonsensical fiction," which was later abandoned in England and by those states which had followed it in America. See Prosser, Handbook of the Law of Torts 502 (3d ed. 1964) (citing cases).

[2] The owner can, of course, exercise some degree of control when he selects a driver; or, at times, he may be required to give some kind of directional advice, like "slow down." Improper performance of these duties may be active negligence, but that is not involved in this case.

he does not actively seek to pull his negligent driver out of trouble, he will have to shoulder any losses he may suffer in an accident. Of course if he does interfere, he is likely to be found actively negligent.[3] One wonders what the owner should do if he is riding in the back seat;[4] perhaps he should just go to sleep.[5]

A second weakness in the doctrine of imputed contributory negligence arises from the fact that courts have often failed to discern the difference between using the fiction of control to impute negligence when the owner-passenger is the defendant, and using it to impute contributory negligence when the owner-passenger is the plaintiff. The assumption has been that if the driver's negligence is imputed, it is only logical to likewise impute his contributory negligence. But there is no justification for imputing contributory negligence, other than "the strong psychological appeal of all rules cast in the form of balanced and logical symmetry."[6] Unfortunately, the empty formalism of this approach, an example of what Harper and James have termed the "both-ways test,"[7] even became imbedded in the first

---

[3] "In the usual case the passenger has no physical ability to control the operation of the car, and no opportunity to interfere with it; and any attempt on his part to do so in fact would be a dangerously distracting piece of back-seat driving which might very well amount to negligence in itself." Prosser, Handbook of the Law of Torts 494 (3d ed. 1964).

[4] Cf. *Nutt v. Pennsylvania R.R.*, 281 Pa. 372, 377, 126 Atl. 803, 805 (1924) ("But an invited guest, and especially one who occupies a rear seat in the car where no opportunity of control exists . . . is not concerned with the operating of the car and cannot be viewed as joining with the driver in its operation . . . .")

[5] Indeed, it has often been held that a driver's contributory negligence cannot be imputed to an owner-passenger who is asleep when the accident occurs. See, e.g., *Stafford v. Roadway Transit Co.*, 165 F. 2d 920 (3d Cir. 1948) (applying Pennsylvania law); *Greyhound Lines, Inc. v. Caster*, 216 A. 2d 689 (Del. S. Ct. 1966).

[6] 2 Harper & James, The Law of Torts 1273 (1956).

[7] See id. at 1273-77.

Restatement of Torts §485: "[A] plaintiff is barred from recovery by the negligent act or omission of a third person if, but only if, the relation between them is such that the plaintiff would be liable as a defendant for harm caused to others by such negligent conduct of a third person."

Courts and commentators have been quick to see these two errors in the doctrine. The fiction was criticized even when applied to a horse-drawn carriage, see *Hoag v. New York C. & H. R.R. Co.*, 111 N.Y. 199, 203, 18 N.E. 648, 649 (1888), and the criticism mounted when the fiction was applied to automobiles: "Any attempted exercise of the right of control by wresting the wheel from the driver would be foolhardy. Equally menacing to the driver's efficient operation of the machine are raucous reproaches, strident denunciations, or even persistent unctuous admonitions from the back seat." *Sherman v. Korff*, 353 Mich. 387, 395, 91 N.W. 2d 485, 487 (1958). For similar statements, see, e.g., *Painter v. Lingon*, 193 Va. 840, 848, 71 S.E. 2d 355, 360 (1952); *Jenks v. Veeder Contracting Co.*, 177 Misc. 240, 243, 30 N.Y.S. 2d 278, 281 (1941), aff'd, 264 App. Div. 979, 37 N.Y.S. 2d 230 (1942), appeal dismissed, 289 N.Y. 787, 46 N.E. 2d 848 (1943); cf. *Southern Pacific Co. v. Wright*, 248 F. 261, 264 (9th Cir. 1918).

Similarly, the "both-ways test" has been strongly criticized. In 1932 it was written that "[c]ourts seem unaware that the policies involved in granting or denying the defensive plea may be different from those controlling the responsibility in damages of a master for the conduct of his servant, and that the latter are probably concerned simply with providing a financially responsible defendant." Gregory, Vicarious Responsibility and Contributory Negligence, 41 Yale L.J. 831, 833 (1932). In *Johnson v. Los Angeles-Seattle Motor Ex-*

*press, Inc.,* 222 Ore. 377, 387, 352 P. 2d 1091, 1095 (1960), the Supreme Court of Oregon rejected the doctrine stating: "The practical necessity for imposing liability on an owner in the cases which do justify the doctrine of imputed liability is not present in the situation where the owner is an injured passenger in his own car. The two-way test of the Restatement does not commend itself as either useful or necessary. Its only virtue, as pointed out in Harper and James, supra, is that it is logical and symmetrical. Important legal rights ought to have better footing than mere architectural symmetry."

It should be noted that the majority does not adopt the old "both ways" test but rather the view of the revised Restatement of Torts, for while §485 partially abolishes the imputed negligence doctrine, that doctrine is retained in the areas of master-servant relations and joint enterprise. See §§486, 491 Restatement of Torts (Second). However, I submit that the criticisms I have noted above concerning the imputed contributory negligence doctrine apply with equal force to the two exceptions carved out by the second Restatement.

In these days of congested travel on high speed highways, the dangers of requiring that someone wrest control of a vehicle from the driver if the latter is negligent certainly are present whether the driver is the bailee, agent *or servant* of the passenger. The Supreme Court of Minnesota re-examined the whole problem of imputed contributory negligence recently in a well-reasoned opinion that deserves close study. See *Weber v. Stokely-Van Camp, Inc.,* 274 Minn. 482, 144 N. W. 2d 540 (1966). There the court repudiated the application of the doctrine to the master-servant relation in automobile negligence cases, stressing the absurdity of the control argument, and the absence of need for a

solvent defendant, unlike vicarious liability cases where the master properly is held accountable for the negligence of his servant.

I look forward to the day when this Court completes its reform in this area.