Wills Eye Hospital and Albert Einstein Medical Center and Temple University of the Commonwealth System of Higher Education, Appellants, v. Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellee, and Philadelphia Association of Interns and Residents, Intervening Appellee.

Argued April 3, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

534 

*H. Thomas Felix, II,* with him *Kim M. Oboz* and *Obermayer, Rebmann, Maxwell & Hippel,* for appellant, Wills Eye Hospital.

*William A. Whiteside, Jr.,* with him *Howard R. Flaxman, Nathan L. Posner* and, of counsel, *Fox, Rothschild, O'Brien & Frankel,* for appellant, Einstein Medical Center.

*Peter Platten,* with him *Theodore J. Martineau* and, of counsel, *Ballard, Spahr, Andrews & Ingersoll,* for appellant, Temple University.

*Anthony J. Malloy,* with him *Francis A. Zulli, James L. Crawford* and *James F. Wildeman,* for appellee, Pennsylvania Labor Relations Board.

*Steven E. Angstreich,* with him *Theodore R. Mann, Barry E. Ungar* and, of counsel, *Mann and Ungar,* for intervening appellee, Philadelphia Association of Interns and Residents.

OPINION BY JUDGE CRUMLISH, JR., November 4, 1974:
This is an appeal from an order of the lower court which affirmed orders of the Pennsylvania Labor Relations Board (Board) in a matter involving the construc-

tion and application of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, 43 P.S. §1101.101 et seq. (PERA). The proceedings which gave rise to this appeal commenced with petitions for representation filed by the Philadelphia Association of Interns and Residents (PAIR) alleging that it should be certified as the appropriate collective bargaining unit for the residents and clinical fellows at Wills Eye Hospital and for the interns, residents and clinical fellows at Albert Einstein Medical Center and at the hospital of Temple University of The Commonwealth System of Higher Education.

In each case the petition was dismissed by the Board in a nisi order, but exceptions thereto were filed by PAIR. A newly constituted Board vacated the previous order and directed that an election be conducted by the proposed unit members named above pursuant to Section 605 of PERA, 43 P.S. §1101.605.[1] As a result of the election, PAIR was then certified by the Board as the appropriate representative for each of the above-named unit members. The Board's orders were later affirmed by the court below.

These appeals have been consolidated for purposes of argument and decision because of the similar facts and issues of law.[2] President Judge JAMES S. BOWMAN granted appellants' petition for supersedeas pending

---

[1] Only one of the appellants raised the argument that the new board exceeded its authority by this action. We find, however, that nothing was done which did not conform with the procedures set forth in the Board's Rules and Regulations authorized by Section 502 of PERA, 43 P.S. §1101.502.

[2] We do not find that the appeal of the Temple University Hospital differs from those of the other hospitals because of its status under the Temple University-Commonwealth Act, Act of November 30, 1965, P. L. 843, 24 P.S. §2510-1 et seq. Contrary to Temple University's assertion, the question herein does not involve the Board's usurpation of any duties of its trustees.

disposition of this appeal because the issues involved herein are of first impression. Our review, of course, is limited to a determination as to whether or not the findings of the Board are supported by substantial and legally credible evidence and whether or not the conclusions deduced therefrom are reasonable and not capricious, arbitrary or illegal. *Canon-McMillan School Board v. Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board and Canon-McMillan Education Association*, 12 Pa. Commonwealth Ct. 323, 316 A. 2d 114 (1974).

The threshold question in this case is whether the interns, residents and clinical fellows here concerned are public employes and therefore entitled to the coverage of PERA. The appellants do not challenge the Board's findings of fact and have conceded their own status as public employers. They claim, however, that the legal conclusions of the court below and of the Board are erroneous in that these interns, residents and clinical fellows are fulfilling educational aspirations in their service at the respective hospitals and that the status of student is incompatible with the status of public employe. We agree with this contention.

The *sine qua non* to the applicability of PERA is that PAIR members be public employes. Section 301(2) of PERA, 43 P.S. §1101.301(2) defines public employe as follows: " 'Public employe' or 'employe' means any individual employed by a public employer but shall not include elected officials, appointees of the Governor with the advice and consent of the Senate as required by law, management level employees, confidential employees, clergymen or other persons in a religious profession, employes or personnel at church offices or facilities when utilized primarily for religious purposes and those employes covered under the act of June 24, 1968 (Act No. 111) . . . ."

This Section contains the requirement that the public employe be employed by the public employer and further enumerates employes specifically excluded by PERA. Interns, residents and clinical fellows are not specifically excluded by Section 301(2); therefore the question to be resolved is whether PAIR members are employed by a public employer enabling them to receive the act's organizational and collective bargaining protections.

The basic problem lies in the failure of the Legislature to define the term employed and is compounded by the lack of judicial interpretation. However, the Supreme Court of Pennsylvania in *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A. 2d 362, 365 (1974) did recently construe a standard for an employer-employe relationship under PERA when Chief Justice JONES stated: "The relations of employer and employe exist when a party has the right to select the employe, the power to discharge him, and the right to direct both the work to be done and the manner in which such work shall be done. McColligan v. Pennsylvania Railroad Co., 214 Pa. 229, 63 A. 792 (1906); See also Smalich v. Westfall, 440 Pa. 409, 269 A. 2d 476 (1970); Ragano v. Socony Vacuum Oil Co., 376 Pa. 271, 101 A. 2d 686 (1954)."

Unfortunately this standard is not as helpful as it might first appear.[3] Selection, discharge and direction

---

[3] *McColligan, Smalich* and *Ragano, supra,* cited by the Supreme Court in *Sweet* are illustrative of a Pennsylvania decisional law which originally was used to define the agency relationship of master-servant. *McColligan* was a master-servant case not an employer-employe case. The Courts then extended this conceptualization of master-servant to an employer-employe situation in cases such as *Ragano.* Finally in *Sweet* this definition was extended to public employment situations. The problem in applying this standard in the instant case is that it seems equally applicable to many persons in student situations. Perhaps this is because all employes are neces-

are standards which are equally applicable to students. Most, if not all, graduate students go before selection committees, are subject to discharge and are directed in work undertaken.[4] The difficult problem which we face is that this is a hybrid situation in which the PAIR members' academic pursuits differ materially from the concept of traditional scholar while their service rendering functions differ from the traditional notion of employe. Therefore, given the act and present decisional law provide little guidance, we must first look to analogous statutes and their interpretations construing the problem of classifying persons as either "student" or employe and second, we must see whether such constructions are consistent with the public policy of PERA.

The Internal Revenue Service has said, stipends paid to interns and residents are taxable as compensation to the recipient. Int. Rev. Code of 1954, §§61(a), 117(b) (2); Rev. Rul. 68-520, 1968-2 Cum. Bull. 58; Rev. Rul. 57-386, 1957-2 Cum. Bull. 107. But many jurisdictions

sarily servants but not all students are employes. PAIR members are servants but not employes.

[4] In fact as to selection, evidence presented to the Board showed candidate members of PAIR when applying for positions at the hospitals went before selection committees comprised of doctors on the staff. A distinction can be drawn between selection by such a committee and "selection" of other "employees" by personnel offices. This distinction bolsters the proposition that appellees are not true employes but are in fact students seeking placement.

As to discharge, the following testimony was presented: "BY THE EXAMINER: Q. Dr. Keeney, in order for me to clarify some facts, I would like to ask you a few questions, if I may. You stated that failure to perform would constitute grounds for dismissal of the residents. Is that correct, sir? A. That would be correct. Q. This does not mean failure to perform *scholastically*, does it? A. Yes. If we make an error and appoint a man without the mental ability to achieve what is necessary to achieve, *that would be our reason for redirecting the man's education*." (Emphasis added.)

have taken the position that such living expenses are allowed primarily as a means of furthering the education of the recipient rather than as payment for services rendered and as such are not taxable. *See Shuff v. United States,* 331 F. Supp. 807 (D. W. Va. 1971); *Wrobleski v. Bingler,* 161 F. Supp. 901 (W.D. Pa. 1958); *Hembree v. United States,* 71-2 T.C. 9636 (D.S.C. 1971). These cases stress the primary purpose of association with the institution. The question to be answered is whether the individual is engaged primarily to advance his education or is an ordinary job holder and wage earner. If we apply this standard to the term "employe" in PERA there is little difficulty in answering the question. The appellees in question are not employes but are students.

In looking to two other statutes for support of the analogy, we refer to the Fair Labor Standards Act, 29 U.S.C. §§201-219 and the Veterans Education Assistance Act of 1966, 38 U.S.C. §§1651-1686. The Fair Labor Standards Act's definition of the term employe closely approximates PERA. It provides: "Employe includes any individual *employed* by an employer" 29 U.S.C. §203(e). (Emphasis added.) Interpretations of this statute have held that registered nurses, licensed practical nurses and x-ray technicians are not employes because the nature of their occupation is primarily self-beneficial, *see* 2 C.C.H. 1968 Lab. L. Rep. (Wages-Hours) ¶30,922, and candidates for Masters' Degrees at hospitals also are not employes under that act since stipends received are merely incidental to education and are not made as payment for work undertaken, *see* 2 C.C.H. 1967 Lab. L. Rev. (Wages-Hours) ¶30,590.

The Veterans Education Assistance Act of 1966 as clarified by the Code of Federal Regulations, 38 C.F.R. §21.4275(a)(1-3) (1973) tells us that residency programs are full time courses enabling the resident to qualify as "student" and to receive educational assist-

ance. Many appellees in the case before us receive these benefits and are classified as students under this act.

Appellees contend that these statutes are not sufficiently analogous to PERA to give the definition of employe in PERA meaning. They argue that the only analogous legislation is the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended*, 77 P.S. §1 et seq. This act, however, provides little guidance. It is too broad, and by definition makes the term employe synonymous with servant, §104 of the Act, 77 P.S. §22. This being so, those who perform any service under the control of the employer can qualify for workmen's compensation benefits whether they are in fact either "employes" or "students."[5]

In a capsule, the stated policy of PERA can be said to have as its purpose the promotion of orderly and constructive relationships between public employers and employes and a recognition that harmonious relationships are required. To accomplish these worthwhile objectives, provisions are included giving individuals the right to organize, bargain collectively, etc.[6] Does

---

[5] The standard of providing "any service" of the type rendered by a servant to a master may indeed be sufficient to be within the Workmen's Compensation statute, but is hardly that conceived by the Legislature in PERA as evidenced by the presence of the concept of "casual employe" in PERA.

[6] Section 101, 43 P.S. §1101.101 states: "The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental process by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and

the adoption of interpretations of analogous statutes defeat this policy? The answer quite simply is no.

Inherent in the stated policy of Section 101, 43 P.S. §1101.101 is a desire for stability accounted for by a continuous employer-employe relationship. The interns, residents and fellows have no such interest. The intern who votes in a unit this year has no connection with that unit next year when he goes in another direction. There is no contemplated continuous relation with the employer. Accordingly, it seems clear that accepting the analogous statute interpretations is in no way inconsistent with the policy of PERA. Applying these criteria to the instant case, it would seem imperative in deciding the status of PAIR members under PERA to look to the dominant purpose for the affiliation with the respective appellant hospitals.

The testimony adduced before the Board made it clear that the primary purpose for the affiliation was to continue medical education not to render service to the hospital.[7] It is clear that PAIR members were not

---

its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large."

[7]"RECROSS EXAMINATION

"By Mr. Hippel: Q. When you came to Wills, what was your basic purpose in coming there? A. To take an opthalmology residency and become Board eligible in opthalmology. Q. And to prepare yourself *educationally*, for that? A. For the practice of opthalmology, *yes*." (Emphasis added.)

Later in the same proceeding this exchange took place:

"CROSS EXAMINATION:

"Q. Did you choose to come to Wills Eye because of the seven thousand dollar stipend or living allowance? A. No, sir, I did not.

selling their services in the marketplace as would the traditional employe. Appellees come to the hospitals primarily to further their medical expertise with the incidental effect of rendering needed service to the hospital. We do not here state that appellees render no service in the traditional form. We do state that when the record is read and viewed in its entirety, it is abundantly clear that PAIR members cannot be considered employes under PERA.[8] The student aspect of the affiliation is paramount.

For the reasons stated above, we reverse.

---

Q. You did not. And did you come to it because of its eminence in the educational opthalmology field? A. I was attracted to the program from a combination of things that I had read about the program from personal discussions with residents at the time, and from discussions with past residents whom I have known when I was in the service, *according to the descriptions they gave of its educational opportunities.*" (Emphasis added.)

[8] We do not reach the question of unit appropriateness raised in the briefs since PAIR members cannot qualify as public employes under Section 301(2).

---

DISSENTING OPINION BY JUDGE BLATT:

I must respectfully dissent.

The Board found as a fact that all members of the proposed unit are extensively engaged in patient care or in patient-related services to the extent that such activities account for 85 to 90 percent of their working time. The remaining 10 to 15 percent of their working time is spent in formal education-related activities such as rounds, classes, conferences and lectures. The Board also found that all members of the proposed unit receive remuneration varying with years of past service, pay wage-related taxes and receive employe benefits such as: Blue Cross and Blue Shield, major medical insurance and group life insurance (identifying them as employes) ; parking, cafeteria and laundry privileges

identical to those of other employes; malpractice insurance coverage; workmen's compensation insurance coverage; and employe identification cards.

Interns, residents and clinical fellows should be considered "employes" under Section 301(2) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P. L. 563, 43 P.S. §1101.301(2) (Supp. 1974-1975), because they spend the bulk of their time performing medical services for which they receive remuneration and because the hospitals themselves treat them as employes for the purpose of determining what benefits they should receive. The members of the proposed unit are unquestionably motivated largely by academic considerations in choosing to serve as interns, residents and clinical fellows. They are also subject to varying degrees of supervision by more experienced members of the hospital staffs. But, I fail to see how these educational aspects of their work can change their status as employes so long as they are primarily engaged in the performance of medical services for patients. Certainly many employes throughout our economy keep educational considerations in mind when choosing a job and they may even be willing to forego a better salary in order to secure educational opportunities, as was apparently the case here. Yet these factors cannot remove such employes from the policy of PERA to promote orderly and constructive relationships between public employers and employes.

Certainly the proposed unit members fall within none of the specific exclusions of Section 301(2) of PERA, which defines "public employe." It is likewise clear that the Pennsylvania Supreme Court has recently defined the employer-employe relationship under PERA so as to cover these proposed unit members. *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A. 2d 362 (1974).

I do recognize, however, that the interns, residents and clinical fellows are, of course, students as well as employes and thus they should be prevented from bargaining on matters which are exclusively within the purview of academic requirements.

The majority also concludes that the members of the proposed unit have no interest in desiring a stable, continuous employer-employe relationship. The record shows that the shortest tenure of any member of the proposed unit is one year and that some members of the proposed unit work for five years at the institution concerned. Even considering the shortest tenure, the public interest would be served by permitting the development of constructive relationships between employers and employes through PERA collective bargaining. Moreover, harmonious relationships and improved conditions worked out through negotiation will also benefit future employees in similar positions.

Judge MENCER and Judge ROGERS join in this dissenting opinion.