460 A.2d 757

**Durant REID**

v.

**Carrington RUFFIN and Granite Mutual Insurance Company and Security Mutual Casualty Company.**

**Appeal of SECURITY MUTUAL CASUALTY COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 19, 1982.

Filed April 8, 1983.

Reargument Denied June 20, 1983.

Petition for Allowance of Appeal Granted Sept. 7, 1983.

---

Lewis Weinstock, Philadelphia, for appellant.
Stephen M. Feldman, Philadelphia, for appellees.

Before JOHNSON, WATKINS and LIPEZ, JJ.

WATKINS, Judge:

The appellant, Security Mutual Casualty Company [Security] appeals from the judgment entered in favor of Durant Reid [Reid] in the amount of $96,687.75 plus interest, recovered pursuant to Reid's garnishment action.

The facts indicate that an automobile accident occurred on July 24, 1972 involving appellee Reid and Carrington Ruffin. Ruffin's vehicle hit Reid's vehicle, causing Reid severe and permanent physical injuries. Reid was unable to work for a period of five months. At the time of the accident, Ruffin was insured by Granite Mutual Insurance Company [Granite] in the amount of $10,000 per person and $20,000 per accident. Granite had entered into a contract for reinsurance with Security for the last $2,500 of Granite's $10,000 coverage, prior to the accident.

Ruffin immediately reported the accident to Granite which then assigned the case to an independent claims adjuster. In October of 1972, a doctor examined Reid on behalf of Granite and determined that the injuries to his right arm were serious, involving partial permanent loss of use of the hand and arm, numbness and the inability to extend the wrist or abduct the thumb. The claims adjuster interviewed Ruffin, and was told by Ruffin of the existence of two eyewitnesses to the accident whose testimony might be unfavorable to Ruffin. This information was forwarded by letter to Granite on December 8, 1982.

On November 1, 1972, Reid had filed his complaint in arbitration against Ruffin. On December 20, 1972, Granite's house counsel sent Security a letter stating (1) that it was possible that Security's portion of the insurance coverage would be involved, (2) that there existed two eyewitnesses whose testimony would be unfavorable to Ruffin, (3) a summary of the report of Granite's doctor on the injuries to Reid and (4) the following statement:

"While we have some defense on the liability in view of the serious permanent injury sustained by the driver I

felt your company should be advised although I do not suggest you carry any reserve at this time."

Security acknowledged receipt of this letter by reply on January 3, 1973 and requested Granite to keep Security advised of developments. Security did not request any further specific information in its reply letter, despite the fact that the reply information contained pre-printed form provisions that could be marked to request additional specific information from Granite.

During the following few months, Reid's counsel sent wage loss information, signed statements of the witnesses adverse to Ruffin and, on April 19, 1973, a settlement offer of $10,000 to Granite, open for 30 days. On May 3, 1973, house counsel for Granite again wrote to Security stating that the names of the eyewitnesses had been provided but failed to mention the offer of $10,000. Reid petitioned to transfer the suit from arbitration to major case listing on May 21, 1973, and informed Granite of this fact. On May 30, 1973, a counter offer of $9,000 was made by Granite's claims representative, which counter offer was rejected by Reid.

On June 13, 1973, Granite's claim representative sent a copy of Reid's transfer petition to Security and stated in an accompanying letter:

Please note that the attorney has withdrawn the Certificate of Readiness and has filed a petition to make this a Major case. The attorney has made a demand of $10,000 and we made him an offer of $9,000, but he is not willing to budge from his demand of $10,000.

Suggest you carry a reserve of $2,000 and will keep you advised of any further developments.

On the same date, the claims representative offered $9,500 to Reid and sent Ruffin a letter indicating his liability for any judgment in excess of $10,000. The letter to Ruffin, their insured, failed to disclose the settlement offers. Security responded on August 16, 1973, inquiring whether an excess letter had been sent to Ruffin and what the ad damnum clause of plaintiff's complaint specified.

After the taking of depositions, Granite finally made an offer of $10,000 to Reid on September 24, 1973, which was rejected. A jury found in favor of Reid after trial in October 1973 in the amount of $80,000 against Ruffin.

Reid then proceeded to commence a garnishment proceeding against both Granite and Security, charging both with bad faith refusal to settle. Following a jury trial, a verdict was rendered for Reid against both insurers on November 23, 1976 in the amount of $70,000 plus interest. Post-trial motions filed by Granite were denied. Granite was subsequently determined to be insolvent. Post-trial motions filed by Security were heard and a new trial for Security granted, which resulted in a verdict again in favor of Reid against Security in the amount of $80,000. The trial court then molded the verdict to $96,687.75. Post-trial motions for judgment n.o.v. or a new trial were denied and this appeal taken.

Appellant Security raises four issues on appeal, namely: (1) whether the reinsurer of an automobile insurance company owes any duty to the insured to participate actively in the defense by the insurer of claims against the insured, (2) whether the reinsurance agreement makes the insurer its agent, so as to render the reinsurer liable, despite a lack of knowledge of the insurer's bad faith in conducting the defense, (3) whether the issue of bad faith of the reinsurer should be submitted to the jury, in absence of any evidence of acts or omissions which violated any duty it owed the insured, and (4) whether the trial court erred in its evidentiary rulings and jury charge with respect to the reinsurance agreement, the reinsurer's duties and related matters.

Reinsurance refers to an "undertaking whereby one insurer agrees to protect another insurer, known as the reinsured, either wholly or partially from a risk which it has undertaken, both policies being in effect at the same time, and the original insured having no interest in the reinsurance." 13A Appleman, Insurance Law & Practice 7681, at 484–85 (1976). When an insurer has the subject of insurance reinsured to him by another, there is "no privity

between the original insured and the reinsurer; the latter is in no respect liable to the former as a surety or otherwise; the contract of insurance and of reinsurance being totally distinct and disconnected." *Appeal of Goodrich,* 109 Pa. 523, 529, 2 A. 209, 211 (1885). The insolvency of the original insurer does not change the nature of the reinsurer's obligation so as to permit the insurer to pursue it directly." 19 Couch on Insurance, 80:66 at 959 (R.A. Anderson ed., 2d ed. (1959)). The insured may, however, bring a direct action against the reinsurer where a proper third-party beneficiary contract to that effect may be found or where the reinsurer is a successor which has assumed the original insurer's liabilities." 19 Couch on Insurance, *supra,* 80:67 at 959.

Security did not have the right to control the settlement negotiations nor did it participate in same. In fact, it did nothing in exercise of its rights under the contract, as was its option. There was no third party beneficiary contract between the companies, and the reinsuring contract did not create a principal-agent relationship with Granite as the contract spells out the rights and obligations of each of the parties. An agency relationship was neither contemplated nor intended by the parties.

Ruffin was not privy to the reinsurance contract nor was he owed any duty by Security as a result of it.

Judgment reversed and judgment non-obstante verdicts is entered for the appellant, Security Mutual Casualty Company.

LIPEZ, J., concurred in the result.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

I respectfully dissent. I view the central issue as whether an automobile accident victim may recover damages from the "reinsurer" of a party liable for a victim's injuries when said "reinsurer" and/or the liable party's original insurer engage in a bad faith refusal to settle a claim. The trial

court answered this question in the affirmative. I would affirm.

Appellant Security raises four specific issues on appeal, namely: (1) whether the reinsurer of an automobile insurance company owes any duty to the insured to participate actively in the defense by the insurer of claims against the insured, (2) whether the reinsurance agreement makes the insurer its agent, so as to render the reinsurer liable, despite a lack of knowledge of the insurer's bad faith in conducting the defense, (3) whether the issue of bad faith of the reinsurer should be submitted to the jury, in absence of any evidence of acts or omissions which violated any duty *it* owed the insured, and (4) whether the trial court erred in its evidentiary rulings and jury charge with respect to the reinsurance agreement, the reinsurer's duties and related matters.

Article 8 of the reinsurance agreement between Granite and Security states:

## ARTICLE 8—LOSS REPORTS

The Company [Granite] shall advise the Reinsurer [Security] promptly of all claims which in the opinion of the Company, may result in an excess loss being charged against this reinsurance, and all subsequent developments thereto which, in the opinion of the Company, may materially affect the position of the Reinsurer.

The Reinsurer agrees to abide by the loss settlements of the Company, it being understood, however, that when so requested the Company will afford the Reinsurer the opportunity to be associated with the Company, at the expense of the Reinsurer, in the defense of any claim or suit or proceeding involving this reinsurance, and that the Company will cooperate in every respect in the defense or control of such claim, suit or proceeding. The Reinsurer shall have the right to examine underwriting and claims files of the Company at all reasonable times and shall have the right to confer with trial counsel retained by the Company with reference to any claim.

The Company shall immediately give notice to the Reinsurer on all claims reserved in excess of the Company's retention, and also shall give prompt notice to the Reinsurer on claims which, in the judgment of the Company could develop into losses involving reinsurance hereunder. Further, as respects bodily injuries, the Company shall report to the Reinsurer all claims involving fatalities, spinal cord damage, brain damage, blindness, extensive burns, multiple fractures or amputations, regardless of liability, where the policy limits (or Workmen's Compensation benefits) applicable to such losses exceed the retention of the Company. Inadvertent omission in dispatching such notices shall in no way effect the liability of the Reinsurer under this Agreement, provided the Company informs the Reinsurer of such omission or oversight promptly upon its discovery. Settlement of claims involving this reinsurance shall not be made without the consent of the Reinsurer, except in those instances where an immediate decision is necessary and it is impracticable to obtain the consent of the Reinsurer. In such instances, the Company shall exercise the necessary powers in the common interest of itself and the Reinsurer, and the Reinsurer agrees to rely upon the judgment of the Company, it being understood that the Company will forthwith advise the Reinsurer of the action taken.

## I.

The first issue raised by Appellant is whether a reinsurer of an automobile insurance company owes any duty to the insured to participate actively in the defense by the insurer of claims against the insured. Reinsurance has been defined as:

[T]he ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the

original insured, and handles all matters prior to and subsequent to loss.... The reinsurance situation arises ... [when] the ceding company finds that it has more risks than it cares to keep in its own portfolio.... The original insured is not notified of the reinsurance, has no contact with the reinsuring company, and is generally not a party to the contract and has no legal interest therein.

13A Appleman & Appleman, *Insurance Law & Practice* § 7681 at 480–81 (1976) (footnote omitted); *see also* Couch on Insurance 2d § 80:66 (1968); 44 Am.Jur.2d *Insurance* § 1867 (1969).

The original insured generally has no interest in the contract for reinsurance; no privity of contract exists. *See* Id. at 50–51; *Appeal of Goodrich,* 109 Pa. 523, 2 A. 209 (1885); *see also Morris & Co. v. Skandinavia Insurance Co.,* 279 U.S. 405, 49 S.Ct. 360, 73 L.Ed. 762 (1929); *Housing Authority of the County of Lebanon v. Envirohousing,* 442 F.Supp. 1193 (M.D.Pa.1977); *Fontenot v. Marquette Casualty Company,* 258 La. 671, 247 So.2d 572 (1971). The theory behind precluding the original insured [1] from bringing an action against the reinsurer is that the original insured usually has no knowledge of the reinsurance agreement and hence, could not have relied upon it when contracting with the original insurer. *Housing Authority of the County of Lebanon, supra.*

Security argues that its only duty arising from the agreement involves the payment of the $2,500 in coverage which was reinsured.

Although Security may not have been under a duty, pursuant to the agreement, to engage in *direct* negotiations for the settlement of the instant claim with the victim's attorney, Security clearly was under a duty to act *in good faith* in reviewing any and all information provided by Granite concerning the claim. This requirement of good faith occurs as a result of the provisions of the agreement

1. Any right to recover by a victim against either the original insurer or the reinsurer arises by means of the original insured's right against either or both insurance companies.

between Security and Granite. According to Section 8 of the agreement, any settlement involving a portion of the coverage reinsured requires the consent of Security, except in certain emergency situations. If Security was not required to act in good faith in regard to claims involving that portion of coverage which has been reinsured, the original insured would be severely prejudiced.

The original insurer of a typical automobile liability insurance policy undertakes three types of obligations: (1) to indemnify the insured against liability for personal and property damage, (2) to defend the insured against any suits arising under the policy and (3) to assume a fiduciary position towards the insured concerning the insurer's rights to make a binding settlement. *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 188 A.2d 320 (1963). This third obligation requires the original insurer to act in good faith and with due care in representing the interests of the insured, and if this duty is breached, the original insurer may be liable for the entire amount of any judgment secured against the insured, regardless of the policy limits.[2] *Gedeon, supra; see also Cowden v. Aetna Casualty and Surety Company*, 389 Pa. 459, 134 A.2d 223 (1957); *Shearer v. Reed*, 286 Pa.Super. 188, 428 A.2d 635 (1981). This obligation to act in good faith in regard to the disposition of claims against the insured creates an agency relationship between the insurer and the original insured. *Cowden, supra.*

Good faith requires an insurer to consider the interests of the insured as well as the insurer's own interests in deciding whether or not to settle a case within policy limits. The insurer must weigh this conflicting interest by making its decision to settle or go to trial as if it had full coverage for whatever verdict might be recovered, regardless of the policy limits. *Rova Farms Resort, Inc. v. Investors Insur-*

2. It has been held that an insured has a cause of action in either assumpsit or tort against the insurer for wrongful refusal to settle based on a breach of the insurer's obligation to represent in good faith the rights of its insured. *Gray v. Nationwide Mutual Insurance Company*, 422 Pa. 500, 223 A.2d 8 (1966).

*ance Company of America,* 65 N.J. 474, 323 A.2d 495 (1974).

Concerning the insurer's decision not to settle, our court stated, in *Shearer v. Reed, id.,* 286 Pa.Superior at 194, 428 A.2d at 638:

> "[A] decision not to settle must be a thoroughly honest, intelligent and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the company." [*Bowers v. Camden Fire Ins. Assoc.,* 51 N.J. 62, 71, 237 A.2d 857, 861 (1968)]. This expertise must be applied, in a given case, to a consideration of *all the factors* [emphasis in the original] bearing upon the advisability of a settlement for the protection of the insured. *While the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more.* [emphasis added] It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial. *Gardner v. Am. Mut. Liab. Ins. Co.,* 31 Cal.App.3d 843, 107 Cal.Rptr. 604, 607–697 (1973). *Rova Farms Resort, Inc. v. Investors Insurance Company of America,* 65 N.J. 474, 489–90, 323 A.2d 495, 503–04 (1974). (emphasis in original)

In my view, Granite clearly was obligated, pursuant to its contract with Ruffin, to act in good faith towards its insured in its settlement negotiations with the victim. If, on the other hand, Security had no duty to act in good faith regarding that portion of the insured's coverage reinsured by Security, then the *insured* could lose the benefit of its agreement with the *original insurer.* In this case, where $2,500 in coverage is reinsured, if the reinsurer has no obligation to act in good faith where the reinsurance agreement limits the ability of the original insurer to settle claims of the insured, then in effect the insured has but $7,500 of

coverage which is subject to the good faith requirement. The insured receives less than what he has bargained for. I do not interpret the duties of the parties to permit such a result.

Therefore, although Security was not required to enter into direct or active settlement negotiations with the victim, I would hold that it was obligated to act in good faith concerning that portion of the negotiations involving the $2,500 of coverage reinsured.

## II.

The second issue is phrased as whether or not the reinsurance agreement created an agency relationship between Granite and Security.

This issue amounts to whether the agreement between Granite and Security was in fact a contract of reinsurance. As stated by the distinguished trial judge WILLIAM M. MARUTANI in his well-reasoned opinion:

> The Agreement between Security and Granite was not a strict contract of reinsurance. The definition suggests that the reinsurer remains in the background and agrees to indemnify the reinsured against its loss. As the previous discussion of the provisions of the Agreement makes clear, Security did not contract to take a back seat. It had the right to associate itself with Granite in the defense of any claim, suit or proceeding. Moreover, it retained the right to control settlement negotiations through its veto power over any settlement offer of more than $7,500. "Liability under any written contract must be determined upon consideration of the words employed, read in the light of attending circumstances." *Fidelity & Deposit Company v. Pink,* 302 U.S. 224, 229 [58 S.Ct. 162, 164, 82 L.Ed. 213] (1937).
>
> Therefore, Security cannot escape the fiduciary duty imposed on it by hiding behind the label "reinsurer." If Security has no duty to act in good faith, the insured Ruffin will be unable to protect himself. In the original

insurance contract between Granite and Ruffin, Granite was given the exclusive right to settle, defend, investigate, or negotiate any claim or suit against Ruffin. Under this contract of insurance, Granite assumed a fiduciary duty imposed by law to act in good faith. Granite then transferred, unbeknownst to Ruffin, a portion of its exclusive right to Security. Security also received a pro rata share of the premiums paid by Ruffin. Thus, unless a fiduciary duty is imposed, Security receives these benefits with no risks, leaving Ruffin with less protection than he thought he had.

*Reid v. Ruffin*, No. 4988 October Term 1972, slip op. at 23–4 (C.P. Philadelphia County, 1981) (footnotes omitted).

I agree with the learned trial court that the agreement in the instant case amounted to something other than a "strict contract of reinsurance."

The trial court determined, as a matter of law,[3] that there existed an agency relationship between Granite and Security, based upon the agreement.

Agency is the relationship resulting from (1) the manifestation of consent of one person to another that (2) the other shall act on his behalf and subject to his control, and (3) consent by the other so to act. *Smalich v. Westfall*, 440 Pa. 409, 413–14, 269 A.2d 476, 480 (1970); Restatement (Second) of Agency § 1(1) (1958).

"The right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times * * *. Further, the principal has power to revoke the agent's authority, although this would constitute a breach of his contract with him * * *. The control of the principal does not, however, include control at every moment; its exercise may be very attenuated and, as

---

3. An issue of agency, based on an interpretation of a written instrument, is a question of law to be determined by the court. *Gillian v. Consolidated Foods Corp.*, 424 Pa. 407, 227 A.2d 858 (1967).

where the principal is physically absent, may be ineffective:" Restatement (Second), Agency § 14, comment a. *Smalich v. Westfall, id.,* 440 Pa. at 414–15, 269 A.2d at 480–81.

A servant is an agent whose physical conduct in performance of service is controlled or is subject to the right of control by the master; therefore, in such a relationship, the master controls not only the results of the work, but the manner in which the work is performed. *Juarbe v. City of Philadelphia,* 288 Pa.Super. 330, 431 A.2d 1073 (1981).

Article 8 of the agreement here under review requires Granite to, inter alia, (1) afford Security the opportunity to be associated with Granite in the defense of any claim, suit or proceeding, (2) cooperate in every respect in the defense or control of such claim, suit or proceeding, (3) allow Security to confer with trial counsel retained by Granite with reference to any claim, (4) give notice to Security on all claims in excess of $7,500 and all claims which, in Granite's judgment, could develop into losses in excess of $7,500, and (5) obtain the consent of Security for any settlement in excess of $7,500, except in those instances where an immediate decision is necessary and it is impracticable to obtain Security's consent, in which case Granite shall exercise the necessary power in the common interest of both parties.

The entire panoply of rights maintained by Security and the concomitant obligations imposed upon Granite by this agreement are such that I would hold that the trial court did not err in determining that, despite the use of the term reinsurer in the agreement, Security and Granite had created an agency agreement concerning that portion of the insurance coverage reinsured whereby Security functioned as the principal/master and Granite the agent/servant.

The right of control by Security over the actions of Granite extended only to claims involving the reinsured portion of the coverage. In the instant case, the claim by Reid clearly involved that coverage. The injuries to Reid

were undisputed as being permanent to a certain extent. All offers of settlement involved sums in excess of $7,500.

Therefore, any bad faith by Granite within the scope of Granite's authority should be attributed to Security because of this agency relationship. *See Smalich v. Westfall, supra.*

Security has not disputed the determination that Granite acted in bad faith. In this regard the trial court, in its opinion, stated:

> The evidence against Granite was sufficient, if not overwhelming, to sustain the jury's verdict that Granite had acted in bad faith in handling the claim against its insured, Ruffin. The examination of the injured plaintiff, made by its own physician, revealed that this working plaintiff would "never fully regain the use of the arm." Granite was also kept currently informed of the plaintiff's wage loss and medical expenses, totalling $5,500. Further, Granite received copies of statements by two witnesses, stating that its insured had entered the intersection on a red light.

> Notwithstanding this compelling evidence as to liability, —which fell far short of the standard that "the chance of a finding of nonliability be real and substantial," *Cowden, supra,*—and notwithstanding notice from its own doctor of the serious, permanent nature of the injuries to the plaintiff, and notwithstanding notice that the plaintiff had already incurred definable losses of $5,500,—not to mention pain and suffering, future losses, etc.—Granite failed to respond to plaintiff's counsel's 30-day offer to settle for the modest amount of $10,000. Approximately two weeks after expiration of the 30-day offer, Granite offered $9,000, and upon such being rejected, subsequently increased its offer to $9,500—still seeking to "save" itself (in fact, Security) $500. During this entire period of negotiating, at no time did Granite inform Ruffin, its insured, of plaintiff's demand, Granite's offers, or give

the insured an opportunity to participate by contribution. It was not until the time of trial that Granite, for the first time, offered the policy limit of $10,000. Such was rejected, and the jury returned a verdict against insured Ruffin in the amount of $80,000.

It is difficult to conjure a more compelling set of facts which will lead to a finding of "bad faith" on the part of an insurance carrier.

*Reid v. Ruffin,* Slip op., *supra* at 18–20. (footnotes omitted).

## III.

The third issue concerns whether there was sufficient evidence of Security's bad faith to have submitted this issue to the jury.

Security argues that (1) the evidence indicates that Granite misled Security by Granite's failure to promptly notify Security of the victim's initial offer to settle for $10,000 and that (2) Security had no right to force or initiate settlements directly with the victim.

I agree that Security was not informed of Reid's original offer to settle within the policy limits until *after* the offer to settle had expired. Granite was negligent in not informing Security of the offer promptly. However, there is no indication that Security discussed the making by Granite of *any* offer at any time, nor is there evidence that Security requested any additional pertinent information concerning Reid's claim, other than whether the insured had been sent an excess letter and what the ad damnum clause of Reid's complaint set forth.

Despite Granite's determination, as communicated to Security initially, that no reserve need be held by Security, the information that was supplied by Granite to Security concerning Reid's claim was sufficient, in my view, to have alerted Security that the value of the claim and the in-

sured's liability, would call for an offer of settlement to the victim of the policy limit. Therefore, I believe Security was under a duty to, at a minimum, discuss the feasibility of such an offer to Reid with Granite.

Security alleges that it had no right to force or initiate settlements with the victim directly. With this determination I agree. However, Security had the *right* and the *duty* to inform Granite that the $2,500 coverage reinsured was available to Granite for an offer. This right and duty arise from the provisions of Article 8 of the agreement discussed *supra*. Furthermore, this right and duty are underscored by the fact that Granite subsequently made offers of $9,000 and $9,500. Clearly, Granite was then willing to offer all of its retained coverage, $7,500, but hesitant to offer all of Security's coverage of $2,500. From the time of the first offer in settlement on May 30, 1973, Granite was acting solely as Security's agent when negotiating a settlement involving more than the dollar amount of the insurance coverage retained by Granite alone. Security's failure to inform Granite of Granite's permission to offer the full $10,000 in coverage amounted to ratification of Granite's acts by silence.[4] *See* Restatement (Second) of Agency § 319 (1958).

Granite made its offers of settlement as the agent of Security. Security was informed of its agent's offers but failed to object to their nature and amount. Therefore, Security should be imputed with any bad faith determined to have been made by Granite.

## IV.

Appellant's final issue is whether the trial court erred in making certain evidentiary rulings and its charge to the

4. I find little, if any, significance in the fact that Granite routinely made settlement offers involving coverage reinsured by Security without securing Security's permission, as required by Article 8 of the agreement.

jury with respect to the agreement, Security's duties and to related matters.

I note initially that the issues concerning rulings on: (1) the amendment of certain Answers to Requests for Admissions, (2) the reading of allegedly objectionable Requests for Admissions to the jury, and (3) the admission of a medical report and testimony with respect to it have been waived by Appellant for failure to preserve them by means of post-trial motions.[5]  *Commonwealth v. Gates,* 295 Pa.Super. 213, 441 A.2d 425 (1982).

The first issue properly preserved by Appellant is whether the trial court erred in permitting a witness to testify, as against the reinsurer, as to his opinion concerning what an insurer's claimsperson's reaction should have been to certain alleged facts.  As Appellant has failed to specifically argue this point in its brief, other than to state it as an issue, I would not consider the merits thereof.  *See* Pa.R. A.P. 2119(a), (e); *Commonwealth v. Shaw,* 494 Pa. 364, 370 n. 3, 431 A.2d 897, 900 n. 3 (1981); *Commonwealth v. Sanford,* 299 Pa.Super. 64, 445 A.2d 149 (1982).

The next issue concerning evidentiary rulings involves the trial court's refusal to permit Appellant to cross-examine Reid's expert witness concerning the reinsurance agreement.

It is well established that the trial court has wide discretion concerning the scope and limits of cross-examination and will not be reversed absent an abuse of discretion. *Gatling v. Rothman,* 267 Pa.Super. 566, 407 A.2d 387 (1979).  The trial court properly refused to allow cross-examination concerning reinsurance in light of the court's determination that this was not a standard reinsurance agreement.  The trial court held, and I would affirm, that Security could be held liable for the bad faith conduct of

---

**5.**  I disagree with Appellee that *all* claims concerning the evidentiary rulings and jury charge were waived for failure of Appellant to brief the issues.  See Rule 340 (E), Philadelphia Court Rules.

Granite because of the agency relationship created by the agreement. Therefore, cross-examination concerning reinsurance was irrelevant because of this determination and the trial court did not abuse its discretion in limiting cross-examination of this expert witness.

Concerning the alleged errors by the trial court concerning the charge to the jury, I find Appellant's arguments to be meritless.

## CONCLUSION

My review of the reinsurance agreement here involved leads me to agree with the distinguished trial court, the Honorable WILLIAM M. MARUTANI, that Security was indeed obligated to act in good faith concerning that portion of the negotiations involving the $2,500 of coverage reinsured. I have no difficulty in finding that, on the facts and wording of the agreement here presented, the trial court did not err in determining that an agency relationship had been created by and between Security and Granite concerning that portion of the coverage reinsured. Since an agency relationship, as a matter of law, did exist in my opinion, it is unnecessary to analyze Security's alleged bad faith, since the bad faith of its agent, Granite, is clear and indisputable.[6] Finding no error in the rulings of the trial court or in its charge to the jury, the judgment entered May 19, 1981 in favor of plaintiff Reid and against garnishee-appellant Security should be affirmed.

6. The trial court, in its opinion filed March 11, 1981, following an exhaustive review of the facts, concluded that Security had, itself, violated its duty of good faith, noting that "[w]hen confronted with the potential of a substantial verdict for the opposing party who has suffered serious permanent injuries, it is unreasonable that the party facing such liability would not take affirmative action to limit its liability as much as possible." *Reid v. Ruffin,* Slip op., *supra,* at 26.