469 A.2d 1030

**Durant REID, Plaintiff-Appellant,**

v.

**Carrington RUFFIN, Defendant,**

**and**

**Granite Mutual Insurance Company, Garnishee,**

**and**

**Security Mutual Insurance Company, Garnishee-Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1983.

Decided Dec. 30, 1983.

Stephen M. Feldman, Philadelphia, for plaintiff-appellant.

Lewis Weinstock, James M. Marsh, Philadelphia, for garnishee-appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

The issue raised on this appeal is whether a reinsurer may be held liable for a judgment in excess of the policy limits where the original insurer is found to have engaged in a bad faith refusal to settle a claim against its insured.

On July 24, 1972, Durant Reid (Appellant) was injured when his car was struck at an intersection by a car driven by Carrington Ruffin. Ruffin was insured by Granite Mutual Insurance Company under a liability policy in the amount of $10,000. Granite had entered into a contract of reinsurance with Security Mutual Insurance Company (Appellee) for the last $2,500 of this coverage. Ruffin reported the accident to Granite, which in turn reported it to Security. Both insurance companies knew at the outset that Reid had sustained serious and probably permanent injuries to his right hand and arm, and that two witnesses would probably give testimony adverse to the insured driver, Ruffin. Reid initiated a personal injury action against Ruffin, but prior to trial offered to settle the case for the policy amount, $10,000, the offer to expire after thirty days. Granite received the offer but did not respond or inform Security. When no response was received within thirty days, Reid's attorney petitioned to remove the case from Arbitration to Major Case Listing. Thereafter, Granite offered a settlement of $9,000, which was refused. Granite informed Security of the $9,000 offer of settlement and the refusal, of the removal of the case to Major Case Listing, and advised Security to carry a $2,000 reserve (indicating that Granite planned to make a second offer of $9,500).

Granite did make a second settlement offer of $9,500 and it too was refused. Almost three months later, at trial, Granite offered to settle for the policy limit of $10,000. This offer also was rejected, and the case proceeded to trial, where a jury awarded Appellant a verdict of $80,000. In a garnishment proceeding against Granite and Security, Reid charged both insurers with bad faith refusal to settle, and a jury awarded judgment against both insurance companies.

Granite, however, had become insolvent. Security's motion for a new trial was granted and a second jury trial was conducted with Security as the only defendant. Again, a jury verdict was entered against Security for the whole amount of the judgment against Ruffin. The trial court molded this verdict to $96,687.75. Security appealed to the Superior Court, which reversed. —— Pa.Super. ——, 460 A.2d 757 (1983). (Opinion by Watkins, J.; Lipez, J., concurring in result; Johnson, J., dissenting).

The Superior Court panel reviewed the applicable law regarding contracts of reinsurance, noting that under such contracts the reinsurer undertakes to protect the original insurer against all or part of a risk which it has undertaken; that the original insured has no interest in the reinsurance; that there is no privity between the original insured and the reinsurer; but that the insured may bring a direct action against the reinsurer where the reinsurance contract may properly be determined to be a third party beneficiary contract or where the reinsurer is a successor which has assumed the original insurer's liability. *See Appeal of Goodrich*, 109 Pa. 523, 529, 2 A. 209, 211 (1885); 13A Appleman, Insurance Law & Practice § 7681, at 484–85 (1976); 19 Couch on Insurance 80:66, 80:67 at 959 (R.A. Anderson ed., 2d ed. (1959)). The court found that on the facts presented,

> Security did not have the right to control the settlement negotiations nor did it participate in same.... There was no third party beneficiary contract between the companies, and the reinsuring contract did not create a principal-agent relationship with Granite.... An agency relationship was neither contemplated nor intended by the parties.

and that

> Ruffin was not privy to the reinsurance contract nor was he owed any duty by Security as a result of it.

—— Pa.Super. at ——, 460 A.2d at 758.

The Superior Court's determination that a principal-agent relationship was not established between Security and

Granite by the reinsurance contract reversed a contrary ruling of law by the trial court. That ruling had been the basis of a special interrogatory submitted to the jury, answered in the affirmative, whether Granite was acting on behalf of Security at the time it engaged in bad faith handling of the claim against its insured.

The Appellant argues here that the Superior Court erred in reversing the trial court's determination that Granite acted as Security's agent. He points to language in the reinsurance contract directing Granite to advise Security of all claims which may result in an excess being charged against Security and to afford Security "the opportunity to be associated with [Granite] in the defense of any claim or suit or proceeding involving this reinsurance," and obliging Granite to "co-operate in every respect in the defense or control of such claim, suit or proceeding." This language, argues Appellant, establishes Security's ultimate control over all claims matters undertaken by Granite. He points further to that section of Article 8 of the contract which dealt specifically with settlement matters as follows:

> Settlement of claims involving this reinsurance shall not be made without the consent of the Reinsurer, except in those instances where an immediate decision is necessary and it is impracticable to obtain the consent of the Reinsurer. In such instances, the Company shall exercise the necessary powers in the common interest of itself and the Reinsurer, and the Reinsurer agrees to rely upon the judgment of the Company, it being understood that the Company will forthwith advise the Reinsurer of the action taken.

The Appellant argues that Security's reservation of the power to consent to all settlements involving the reinsurance establishes conclusively that the final decision regarding settlement of claims rested in Security and that Granite acted as an agent on Security's behalf in such matters. We cannot agree.

This Court has defined agency as "the relationship which results from (1) the manifestation of consent of one person

to another that (2) the other shall act on his behalf and subject to his control, and (3) consent by the other so to act." *Smalich v. Westfall,* 440 Pa. 409, 413–414, 269 A.2d 476, 480 (1970); *See* Restatement (Second) of Agency § 1(1) (1958).

Article 8 provides only that settlement shall not be made without Security's consent except where circumstances require an immediate decision by Granite. The Article does not require all decisions regarding settlement matters involving reinsurance to be approved by Security. Security is given no control over decisions by Granite not to settle a claim. Likewise, Security could not direct Granite to accept an offer of settlement if for some reason Granite was unwilling to do so. It is difficult to conceive of an agency relationship wherein the principal has no authority to require his agent to perform an act on his behalf.

We think it is abundantly clear that Security authorized Granite to act on its behalf only "in those instances where an immediate decision is necessary and it is impracticable to obtain the consent of the Reinsurer." Otherwise, settlement was not to be made without Security's consent. Thus if Granite can be said to be the agent of Security, it is only to the limited extent of instances where an immediate decision *to settle* is necessary. Because those circumstances are not present in this case, and because the decision which resulted in a finding of bad faith was Granite's decision *not to settle,* a decision over which Security had no control, the bad faith of the insurer cannot be imputed to the reinsurer.

The Appellant makes a separate argument that, apart from the principal-agent theory, he is entitled to recover directly from Security for its own bad faith in refusing to settle. He asks this Court, in effect, to abandon the privity of contract requirement and impose a duty on the reinsurer to act in a certain way toward the original insured. This argument is made without citation to supporting cases and despite overwhelming authority from numerous jurisdictions to the contrary. *See Schuylkill Products, Inc. v. H.*

*Rupert & Sons, Inc.*, 305 Pa.Super. 36, 451 A.2d 229 (1982) and cases cited therein.

■ We find no reason to overrule those decisions which permit no action by an original insured against a re-insurer because of lack of privity. The reason for the rule is inherent in the nature of the reinsurance contract. Reinsurance is

> the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the *liability of the reinsurer is solely to the reinsured,* which is the ceding company, and in which contract the *ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss. . . .*
>
> The reinsurance situation arises ... [when] the ceding company finds that it has more risks than it cares to keep in its own portfolio. . . . The original insured is not notified of the reinsurance, has no contact with the reinsuring company, and is generally not a party to the contract and has no legal interest therein.

13A Appleman, Insurance Law and Practice § 7681 (1976) (emphasis added).

In *Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 468, 134 A.2d 223, 227 (1957) this court held that an insurer may be held liable "if the insurer's handling of the claim, including a failure to accept a proffered settlement, was done in such a manner as to evidence bad faith on the part of the insurer *in the discharge of its contractual duty.*" (Emphasis added). This "contractual duty" is, of course, the duty arising from the insurer's promise to defend the insured regardless of the policy limits. In *Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 508, 223 A.2d 8, 11 (1966), we reiterated that the case law

> employing *contractual* terms for the obligation of the insurer to represent in good faith the rights of the insured, indicates that a breach of such an obligation constitutes a breach of the insurance *contract* for which an action of assumpsit will lie. (Emphasis added).

 Because the reinsurer has not assumed a contractual duty to represent the original insured, he has no obligation to the original insured which he must discharge in good faith. The reinsurer's only obligations are toward the reinsured/original insurer and arise out of their contract. Because the Appellant is not privy to that contract and has no interest therein, no enforceable rights inure to his benefit therefrom.

As there is no basis for imputing the bad faith of the original insurer, Granite, to the reinsurer, Security, and as there is no basis for permitting the original insured to proceed directly against the reinsurer, the Superior Court was correct in reversing the judgment of the trial court.

The judgment of the Superior Court is affirmed.

FLAHERTY, J., filed a dissenting opinion in which ROBERTS, C.J., and HUTCHINSON, J., joined.

FLAHERTY, Justice, dissenting.

I am compelled to vigorously dissent.

This case involves the question of when an insurance company which has reinsured another insurance company may be liable for the reinsured's bad faith in failing to accept an offer of settlement on behalf of an individual policyholder for the face amount of the policy. On July 24, 1972 Durant Reid, appellant herein, was injured in an automobile accident when his car was struck at a right angle intersection by the car driven by Carrington Ruffin. Ruffin was insured by Granite Mutual Insurance Company (Granite) under a liability policy in the amount of $10,000. Granite, in turn, had reinsured the last $2,500 of this coverage with Security Mutual Insurance Company (Security). Ruffin reported the accident to Granite, which, in turn, reported it to Security. Both insurance companies knew at the outset that Reid had sustained serious and probably permanent injuries to his right hand and arm, and that two witnesses would probably give testimony adverse to the insured driver, Ruffin. Reid initiated a personal injury

action against Ruffin, but prior to trial Reid, through his attorney, offered to settle the case for the policy amount, $10,000, the offer to expire after thirty days. Granite received the offer but did not respond or inform Security. When no response was forthcoming, Reid's attorney petitioned to remove the case from Arbitration and to Major Case Listing. Thereafter, Granite offered a settlement of $9,000, which was refused. Granite informed Security of the $9,000 offer of settlement and the refusal, of the removal of the case to Major Case Listing, and advised Security to carry a $2,000 reserve (indicating that Granite planned to make a second offer of $9,500—Granite's $7,500 plus Security's $2,000), *See* Granite's June 13, 1973 letter to Security, *infra.*

Granite did make a second settlement offer of $9,500 and it too was refused. Almost three months later, at trial, Granite offered to settle for the policy limit of $10,000. This offer also was rejected, and the case proceeded to trial, where a jury awarded plaintiff a verdict of $80,000, which the trial court molded to $96,687.75. Next, in a garnishment proceeding against Ruffin's insurers, Granite and Security, Reid charged both insurers with bad faith refusal to settle, and a jury awarded judgment against both insurance companies. A motion for a new trial was granted; however, Granite had become insolvent, and a second jury trial was conducted with Security as the only defendant. Again, a jury verdict was entered against Security for the whole amount of the judgment against Ruffin. Security appealed to a panel of Superior Court, which reversed, Judge Johnson dissenting. This Court granted the petition for allowance of appeal from the judgment of Superior Court.

It would be well, at the outset, to review the salient features of insurance law which are necessary for disposition of this case. As to the obligation which an insurance company has to its insured in a case where the company asserts in its policy a right to handle all claims against the

insured, including the right to make a binding settlement, this Court has stated:

> ... [B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interests of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy for the entire amount of the judgment secured against the insured.

*Gray v. Nationwide Mutual Insurance Co.*, 422 Pa. 500, 504, 223 A.2d 8, 9–10 (1966), citing *Gedeon v. State Farm Mutual Automobile Insurance Company*, 410 Pa. 55, 59, 188 A.2d 320, 322 (1963). In the present case, Ruffin's policy with Granite reserved the sole authority to make settlement of any claim under the policy to Granite, and thus under Pennsylvania law, the company was subject to a good faith requirement in conducting settlement negotiations.

Granite's agreement with Security was a contract for reinsurance, the nature of which has been described as follows:

> The reinsurance situation arises in this manner. The primitive insurer, or the ceding company, finds that it has more risks than it cares to safely keep in its own portfolio. It has incurred expenses in connection with agency commissions, ordinary overhead, and the like, in addition to the reserve for payment of the claim. Consequently, it agrees to turn over to another insurer, usually one handling nothing but such reinsurances, half of such risk, or all of such risk in excess of a certain sum, in which latter event it is termed excess insurance. The premium which it pays to the reinsurer for the hazard which it assumes is not as large in proportion as that which the ceding company retains, since the reinsurer does not have a like agency expense or similar overhead. The original insured

is not notified of the reinsurance, has no contact with the reinsuring company, and is generally not a party to the contract and has no legal interest therein. Thus, a diversification or spread of risk is achieved with greater security, though less profit, to the ceding company.

13A Appleman, Insurance Law and Practice § 7681 (1976).

In Granite's reinsurance contract with Security, Article 8 contains the following provision:

> Settlement of claims involving this reinsurance shall not be made without the consent of the Reinsurer, except in those instances where an immediate decision is necessary and it is impracticable to obtain the consent of the Reinsurer. In such instances, the Company shall exercise the necessary powers in the common interest of itself and the Reinsurer, and the Reinsurer agrees to rely upon the judgment of the Company, it being understood that the Company will forthwith advise the Reinsurer of the action taken.

Thus, according to the terms of this agreement, Security must approve any settlements involving its reinsurance, except in cases where it would be impracticable to get Security's approval, and in those cases, Granite is authorized to make what amounts to a good faith settlement. A major question in the case is whether this provision of the Granite-Security agreement establishes an agency relationship between the two companies.

This Court has defined agency as "the relationship which results from (1) the manifestation of consent of one person to another that (2) the other shall act on his behalf and subject to his control, and (3) consent by the other so to act." *Smalich v. Westfall*, 440 Pa. 409, 414, 269 A.2d 476, 480 (1970); Restatement (Second) Agency § 1(1). Applying these principles of agency law to the settlement provision of Article 8, an agency would arise where Granite effected a settlement with Security's consent, or, because of exigent

circumstances, effected a settlement without Security's prior approval.[1]

Moreover, Security, by virtue of its contractual identity as Granite's principal in settlement matters involving reinsurance coverage, assumes Granite's duty of good faith. Were this not so, Granite, who as the primary insurer has a duty of good faith to the policyholder, could be frustrated in its exercise of that duty by Security's withholding of its contractually required consent in settlement matters for reasons which may be commercially sound but which do not meet the good faith standard required of the primary insurer. Such a result would be anomalous.

Concerning the settlement activity that occurred in this case, Granite, without notifying Security of the plaintiff's settlement offer for the face amount of the policy, refused the offer by inaction. Almost two months after the offer of settlement was made, on June 13, 1973, Granite wrote to Security as follows:

> Enclosed please find copy of Arbitration Program submitted by the plaintiff's attorney which is self-explanatory.
>
> *Please note that the attorney has withdrawn the Certificate of Readiness and has filed a Petition to make this a Major Case.* The attorney has made a demand of $10,000.00 and we made him an offer of $9,000.00, but he is not willing to budge from his demand of $10,000.00. Suggest you carry a reserve of $2,000.00 and will keep you advised of any further developments.

(Emphasis in original). At the time of their receipt of this letter, Security knew: (1) damages already had been sustained in excess of $5,500 exclusive of pain and suffering

1. The majority asserts that because Security "has no authority to require [Granite] to perform an act on [its] behalf" there can be no agency relationship. "Security is given no control," according to the majority, "over decisions by Granite not to settle a claim." At 1033. This view, on the facts of this case, is too narrow. Security's control consists in its ability to advise Granite to settle a particular claim involving Security's money, and, in the last resort, paying over to the policy holder the amount of its reinsurance coverage. And in any event, this case involves settlement activity, not the absence of settlement activity, of which Security must approve under Article 8.

and loss of future earnings; (2) Granite's own doctor verified that plaintiff would not fully regain the use of his hand and arm because of nerve damage; (3) plaintiff's attorney had furnished Granite with the names of two witnesses whom Granite was unable to locate, but who would put responsibility for the accident on the insured; (4) Granite had said only that it had "some defense" to plaintiff's action.

In summary, on June 13, 1973, approximately three months before trial, Security's situation was that while it had not been informed of plaintiff's earlier settlement offer, it knew of Granite's $9,000 offer and of Granite's impending $9,500 offer. It also knew of the seriousness of plaintiff's injuries and of the two witnesses who would put responsibility for the accident on the insured. Finally, it knew that plaintiff's attorney was "not willing to budge from his demand of $10,000."

As stated earlier, an insurance company which has reserved the right to make a binding settlement has a fiduciary duty towards the insured to accept reasonable offers of settlement. A fair statement of the elements of that duty is as follows:

(1) The interests of insured and the insurer are balanced by requiring the insurer to treat the claim as if he alone were liable for the entire amount.

(2) When there is little possibility of a verdict or settlement within the policy limits, the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated on all of the circumstances of the case, that it has a good possibility of winning the suit.

(3) The insurer cannot hazard the well-being of the insured.

(4) Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly.

*Gedeon v. State Farm Mutual*, 410 Pa. 55, 61, 188 A.2d 320, 323 (1963) (Concurring Opinion of Mr. Justice Eagen)

summarizing *Cowden v. Aetna Casualty*, 389 Pa. 459, 134 A.2d 223 (1957). There is ample evidence in the present case to find, as a jury did, that Granite breached its fiduciary duty to accept a settlement offer for the amount of the policy. The likelihood of losing the case in an amount far in excess of the policy coverage was very great. The remaining question is whether Security was liable for Granite's bad faith under the circumstances of this case, where Granite did not seek Security's approval of settlement offers which it had made and was about to make.

It is evident that once Granite made settlement offers in excess of $7,500, it was involving Security in its settlement endeavors, for Security's $2,500 reinsurance coverage came into play to the extent that Granite's liability exceeded $7,500. Thus, where Granite informed Security of its past and impending settlement attempts ($9,000 and $9,500), and of the plaintiff's demand for $10,000, and where Security knew of the likelihood that Granite would not prevail in a lawsuit, but made no response to the communication of Granite's past and impending offers, allowing Granite to proceed with its settlement activity, it became liable as Granite's principal, for it implicitly endorsed Granite's handling of its money, and it failed to exert any control over Granite's activities.[2] A principal who is contractually bound to consent to proposed settlement activity may not, by remaining silent, escape liability for its agent's conduct when the conduct has been communicated to the principal. We have earlier stated that Security's settlement activity, like Granite's, is subject to a good faith requirement, and since Granite's settlement activity was found to be in bad faith, Security's acquiescence in that activity subjects it to identical liability.

For these reasons, I would reverse the court below and reinstate judgment for the appellant.

ROBERTS, C.J., and HUTCHINSON, J., join this dissenting opinion.

2. See note 1, supra.