559 A.2d 1010

**William J. VICKODIL, Sr. and Jean R. Vickodil, his wife, Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1988.

Decided June 8, 1989.

See also, 356 Pa.Super. 325, 514 A.2d 635.

Ruth A. Zittrain, Zittrain & Zittrain Pittsburgh, for petitioners.

Thomas F. Halloran, Sr. Depty. Atty. Gen., Harrisburg, for respondent, Insurance Dept.

Daniel B. Winters, Greg. T. Kinskey, Winters, McKenna & Arcovio, Pittsburgh, for Scor Reinsurance Co.; James C. Schraeder, David M. Spector, Mayer, Brown & Platt, Chicago, Ill., of counsel.

Before BARRY and SMITH, JJ., and KALISH, Senior Judge.

## OPINION

BARRY, Judge.

Before the Court are preliminary objections to William and Jean Vickodils' original jurisdiction complaint[1] against

---

1. The complaint was filed in our original jurisdiction pursuant to 42 Pa.C.S. § 761(a)(3).

the Commonwealth of Pennsylvania Insurance Department (Department); its Director of Liquidation James Lewis; Kramer Capital Consultants, Inc. and Paul Sweeney in their capacities as the Department's specially appointed deputy rehabilitators of Northeastern Fire Insurance Company (Northeastern Fire); Northeastern Fire employees Hugh O'Brien and Paul Tyahla;[2] and Scor Reinsurance Company (Scor).

The complaint arises from the following underlying facts. The Vickodils obtained a $1.475 million judgment against a tortfeasor, insured by Northeastern Fire, based on an automobile accident tort claim. The chain of insurance was as follows: (1) the tortfeasor was insured by Aetna Life and Casualty Company for liability up to $100,000; (2) Northeastern Fire, the primary excess insurer, covered liability from $100,000 to $1,000,000, ninety percent of which was reinsured by Scor pursuant to a contract between Scor and Northeastern Fire; (3) Lexington Insurance Company, an additional excess insurer, provided coverage for liability exceeding $1,000,000. Unfortunately for the Vickodils, during the litigation of their negligence action, Northeastern Fire was ordered into rehabilitation and later liquidation, pursuant to the Insurance Department Act of 1921 (Act).[3] This effectively precluded the Vickodils from receiving direct and immediate satisfaction of the entire judgment from the Northeastern Fire insurance proceeds.[4] Although

**2.** The foregoing parties have filed a single set of preliminary objections and for the purposes of this opinion will be collectively referred to as the "Commonwealth defendants."

**3.** Sections 514—552 of the Act of May 17, 1921, P.L. 789, *as amended,* added by the Act of December 14, 1977, P.L. 280, 40 P.S. §§ 221.14–221.52. The Insurance Department has supervised the rehabilitation and liquidation of Northeastern Fire under this Court's direction. *Browne v. Northeastern Fire Insurance Co.,* No. 2132 C.D.1982.

**4.** Upon being ordered into liquidation, Northeastern Fire's assets, including the $810,000 reinsurance proceeds owed by Scor to Northeastern Fire, became assets of the Northeastern Fire estate, Section 503 of the Act, 40 P.S. § 221.3. As such, these proceeds were not directly distributable to the Vickodils. Distribution of assets and payment of claims against the insured of a liquidated insurer is prescribed by Sections 519—552, 40 P.S. § 221.19–221.52. The claimant must file a claim with the liquidator of the estate of the insolvent

Northeastern Fire's liquidation entitled the Vickodils to recovery from the Pennsylvania Insurance Guaranty Association fund for insolvent insurers, they recovered only the statutory allowable maximum of $299,900, thus leaving $600,100 of the judgment unsatisfied.[5]

The Vickodils' lengthy complaint presents novel causes of action with several separate counts against each of the defendants. The gravamen of each of these counts is that the defendants violated fiduciary duties and engaged in bad faith and otherwise careless conduct, which prevented the Vickodils from obtaining the insurance proceeds prior to Northeastern Fire's liquidation. They allege that, but for the defendants' conduct, the underlying tort claim would have been settled without trial and for a lesser amount than the judgment, or that the judgment would have been satisfied, prior to liquidation.

The Vickodils maintain, however, that the relief they seek is not payment of the insurance proceeds from the Northeastern Fire estate;[6] rather, the Vickodils request monetary *damages*, measured by the amount of the unsatisfied judgment, as compensation for the harm allegedly caused by the defendants' breach of fiduciary duty, carelessness and bad faith.[7]

In addition to the state law claim, the Vickodils' complaint sets forth federal claims under 42 U.S.C. § 1983 against the Department and Lewis, for violations of the Vickodils' civil rights.

insurer, who then acts under court direction to distribute the estate's assets in accordance with a statutorily ordered priority of claims. Sections 537—546, 40 P.S. § 221.37–221.46.

5. The Pennsylvania Insurance Guaranty Assocation Act, Act of November 25, 1970, P.L. 716, *as amended*, 40 P.S. §§ 1701.101–1701.605, provides for payment of claims in order to prevent financial loss to claimants resulting from an insurer's insolvency. Such payments are limited to an amount in excess of $100 but less than $300,000. Section 201(b)(1)(i), 40 P.S. § 1701.201(b)(1)(i).

6. The Vickodils apparently recognize that the proper procedure for recovery of the insurance proceeds *against the Northeastern Fire estate* is governed by the statute. *See supra* note 3.

7. The complaint further requests that the award include interest, counsel fees, costs and punitive damages against each defendant.

■ The Commonwealth defendants and Scor have separately filed preliminary objections, asserting that the complaint fails to state a claim for relief. We note in addressing these preliminary objections that a demurrer admits all well-pleaded material facts in the complaint, as well as all reasonable inferences deducible therefrom but does not admit legal conclusions, unwarranted factual inferences, argumentative allegations or expressions of opinion. *Department of General Services v. Celli–Flynn*, 115 Pa.Commonwealth Ct. 494, 540 A.2d 1365 (1988). We address the preliminary objections seriatim.

## 1. COMMONWEALTH DEFENDANTS

In support of their demurrer to the state law claim, the Commonwealth defendants contend that they owed the Vickodils no duty with respect to the conduct alleged in the complaint.

The complaint speaks for itself and we deem it unnecessary to repeat the numerous and lengthy allegations contained therein. Suffice it to say that the complaint alleges that the Commonwealth defendants, in their various capacities of control over Northeastern Fire during the rehabilitation and liquidation periods, mishandled settlement negotiations of the Vickodils' claim against Northeastern Fire's insured. The Vickodils also allege that the defendants purposefully and in bad faith delayed and avoided settlement so that upon liquidation, the Scor reinsurance proceeds would revert to the Northeastern Fire estate rather than flow through directly to the Vickodils.

■ It is axiomatic that a plaintiff may not maintain a tort action unless the law imposes on the defendant a duty to the plaintiff. *Moore v. Department of Justice*, 114 Pa.Commonwealth 56, 538 A.2d 111 (1988). Whether the Commonwealth defendants owed a duty to the Vickodils concerning the conduct alleged in the complaint is a question of law for this Court to decide.

■ In resolving this question, we are mindful that the Commonwealth defendants' duties and obligations derive, if at all, from their statutorily regulated positions of control over Northeastern Fire. Rehabilitation of an insurer may be ordered on any number of grounds relating to the conduct of business by the insurer or its financial condition. Section 514 of the Act, 40 P.S. § 221.14(1)–(12). Once ordered, the Insurance Commissioner is appointed rehabilitator by the Court and has broad discretion to structure a plan of rehabilitation. *Muir v. Transportation Mutual Insurance Co.*, 105 Pa.Commonwealth Ct. 156, 523 A.2d 1190 (1987). The rehabilitator is required to take possession of the insurer's assets, Section 515(c), 40 P.S. § 221.15(c), and has all the powers of its directors and officers to direct, manage, and deal with the property and business of the insurer. Section 516(b), 40 P.S. § 221.16(b). The rehabilitator may also appoint deputies, if necessary. Section 516(a), 40 P.S. § 221.16(a). The powers and duties of a liquidator are generally the same. *See* Section 523(1)–(23), 40 P.S. § 221.23(1)–(23). In short, the rehabilitator or liquidator steps into the shoes of the insurer's officers and directors in the conduct of that insurer's affairs.

■ However, these defendants cannot be strictly compared to similarly situated persons controlling a financially stable insurance company conducting normal business. Rather, the General Assembly has imposed specific obligations on the Commissioner as rehabilitator and on her appointed deputies in this context, mandating that they exercise their discretion in conformance with statutorily prescribed standards and objectives. Sections 501–563 of the Act, 40 P.S. § 221.1–221.63. We conclude that the statute imposes the duty to act with a broader view toward minimizing inevitable financial harm to *all* policyholders, creditors and the general public. Section 501, 40 P.S. § 221.1. Implicit is the realization that when an insurance company is under threat of insolvency, or in a financially "hazardous" condition, Section 514(1), 40 P.S. § 221.14(1), individual interests may need to be compromised in order to

avoid greater harm to a broader spectrum of policyholders and the public.

■ Our Supreme Court has written that "the concept of duty amounts to no more than the sum total of those considerations which led the law to say that a particular plaintiff is entitled to protection." *Sinn v. Burd*, 486 Pa. 146, 164, 404 A.2d 672, 681 (1979). Here, our General Assembly has decided as a matter of public policy that the defendants must treat all policyholders, claimants and creditors of financially distressed insurers in an orderly and predictable fashion prescribed by the statute. We conclude that the law entitles the Vickodils only to the protection provided by the statute. Thus, the Commonwealth defendants owed the Vickodils no duty actionable under either tort or contract principles while acting pursuant to the statutory directives.

The actions which the Vickodils described in their complaint fall within the ambit of the Commonwealth defendants' discretion under the statute.[8] Therefore, we conclude that the alleged acts by the Commonwealth defendants violated no duty to the Vickodils. While well-pleaded fraudulent conduct certainly is not within this ambit of regulated conduct, the "fraud" allegations in the Vickodils' complaint are no more than conclusory and nonspecific averments of conduct, *see* Pa.R.C.P. No. 1019(b), stating either malfeasance or nonfeasance, which conduct actually falls within the aforementioned statutory authority. Accordingly, the Commonwealth defendants' demurrer to the Vickodils' state law claims is sustained.[9]

**8.** As previously stated in this opinion, the complaint's numerous and lengthy allegations speak for themselves; however, their gravamen is that the various defendants mishandled settlement negotiations of the Vickodils' claim against Northeastern Fire's insured. Specific allegations include failure to sufficiently investigate and review the Vickodils' claim, tender of inadequate settlement offers and failure to properly supervise settlement negotiations.

**9.** Our disposition renders it unnecessary to address the preliminary objections moving to strike the punitive damages claim and raising the doctrine of *lis pendens* as a bar to the suit. As to the latter, the Commonwealth defendants contend that the complaint's allegations

## 2. FEDERAL § 1983 ACTION

■ The Vickodils' § 1983 federal civil rights claims allege that they had a property right to direct receipt, or "cut through," of the Scor reinsurance proceeds, and that they were deprived of this right as a result of the Department and Lewis' erroneous legal interpretation that the statute disallowed such a "cut through" during rehabilitation.

The Department and Lewis' demurrer asserts that the Vickodils had no such right and that, therefore, they cannot maintain their civil rights claim.[10]

We note initially, with respect to the property right alleged to have been violated, that while Northeastern Fire's rehabilitation may have vested in the Department and Lewis the *authority* to pay the Vickodils' claim, this did not necessarily create a *right* in the Vickodils to receive the reinsurance proceeds directly. As previously stated, the statutorily authorized and court-ordered rehabilitation necessarily modified existing rights of all parties with claims against Northeastern Fire's assets. Thus, if the Vickodils had any interest in receiving the reinsurance proceeds, it became subject to the rehabilitation statute's mandate that the rehabilitators conduct Northeastern Fire's business with due consideration to all policyholders, creditors and the public as a whole. The United States Supreme Court has

should be addressed as a proof of claim in the ongoing liquidation proceeding in this Court, *Browne v. Northeastern Fire Insurance Co.,* No. 2132 C.D.1982. The Vickodils respond that collateral estoppel bars this assertion since we previously rejected it in a similar action commenced by Lexington Insurance Company against the same defendants. This Court's Order in *Lexington v. Insurance Department,* No. 689 C.D.1986, filed October 1, 1987, denied the defendants' motion to dismiss, concluding that Lexington's complaint "presents separate and distinct issues from those presented in the ongoing [liquidation proceeding]."

10. The Commonwealth defendants' posit, as an additional basis for sustaining the demurrer as to the *Department,* that a § 1983 action requires that the conduct complained of was committed by a *person* acting under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

written that in order to have a constitutionally protected property right in something,

> a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). However, our Supreme Court has held that jurisdiction over actions for monetary damages brought under 42 U.S.C. § 1983 against the Commonwealth or its officers acting in their official capacity lies in the courts of common pleas. *Balshy v. Rank,* 507 Pa. 384, 490 A.2d 415 (1985). Hence, we must transfer this action to the Dauphin County Common Pleas Court.

## 3. SCOR

In support of its demurrer Scor contends that, under Pennsylvania law, a party seeking recovery against an insured whose insurer has in turn ceded a portion of the risk to a reinsurer has no cause of action against that reinsurer for bad faith failure to settle. *Reid v. Ruffin,* 503 Pa. 458, 469 A.2d 1030 (1983). We are also constrained to transfer this action against Scor, which is a corporate reinsurer not acting in any capacity as a Commonwealth agency or official. Pa.R.A.P. 751; *Department of Labor and Industry, Bureau of Labor Standards v. P. Mastrippolito and Sons,* 75 Pa.Commonwealth Ct. 431, 462 A.2d 338 (1983). Accordingly, we will order the Vickodils' claim transferred to the Dauphin County Common Pleas Court.

## ORDER

The preliminary objections to the complaint of William and Jean Vickodil brought under 40 P.S. §§ 221.14–221.52, in the nature of a demurrer and motion to strike averments of fraud, filed by the Commonwealth of Pennsylvania Insurance Department, James S. Lewis, Kramer Capital Consultants, Inc., Paul Sweeney, Hugh O'Brien, and Paul Tyahla, are sustained.

The complaint of William and Jean Vickodil brought under 42 U.S.C. § 1983, and preliminary objections thereto, are transferred to the Dauphin County Common Pleas Court.

The complaint of William and Jean Vickodil against Scor Reinsurance, and preliminary objections thereto in the nature of a demurrer, and motion to strike averments of fraud filed by Scor Reinsurance Company are transferred to the Dauphin County Common Pleas Court.